DECISION AND JOURNAL ENTRY
Appellants-plaintiffs appeal from a judgment of the Summit County Court of Common Pleas that granted summary judgment in favor of appellee-defendant Dr. Thomas Stover, M.D. This Court affirms.
 I.
On January 6, 1995, Cathy Lownsbury ("Lownsbury") went to Akron City Hospital's ("ACH") maternal-fetal medicine center for a prenatal visit. Lownsbury was seen by a third year resident-physician. The resident-physician ordered an ultrasound and Non-Stress Test be completed. These tests were completed and evaluated by a perinatologist (specialist in maternal-fetal medicine), Dr. George VanBuren. Based on the results of the tests, Lownsbury was sent to labor and delivery. A dispute exists as to whether the doctor who sent Lownsbury to labor and delivery ordered that labor be induced, or that a Contraction Stress Test ("CST") be performed. Lownsbury was seen on an outpatient basis in labor and delivery. A resident-physician performed a physical examination and a CST. The resident-physician consulted with a more senior resident-physician to interpret the CST. Based on the test results interpreted by the senior resident-physician, Lownsbury was sent home. She was instructed to follow up and to have another CST within one week. The results of the CST were reviewed the next morning, January 7, 1995, by the perinatologist. The reviewing doctor agreed with the interpretation by the senior resident.
Dr. Stover was never notified and was not aware that Lownsbury was at the hospital. He was never consulted regarding the tests or interpretation of the test results. He never examined, treated, evaluated or consulted with anyone about Lownsbury. He had no contact with the patient.
On January 10, 1995, Lownsbury gave birth to a severely brain damaged child, Rebecca. Appellants' medical experts opine that if labor had been induced earlier, the child would not have suffered permanent neurological injury.
Upon learning that Dr. Stover was the supervisory physician of ACH's labor and delivery department on January 6, 1995, the day Lownsbury had been seen for testing, appellants filed suit against Dr. Stover charging that he was responsible for Rebecca's injuries.[1] Appellants' complaint alleged that Dr. Stover is liable for Rebecca's injuries because he failed to supervise the residents on duty and ensure that the requisite prenatal care was provided to Lownsbury. After extensive discovery, Dr. Stover moved for summary judgment. Because he did not treat, evaluate, consult, or even know of Lownsbury's hospital visit, Dr. Stover argued that he did not owe a duty to Lownsbury or Rebecca because a physician-patient relationship had never been established. The trial court granted summary judgment in favor of Dr. Stover.
Appellants appeal, asserting one assignment of error.
 II. ASSIGNMENT OF ERROR The Trial Court Erred In Granting Defendant Thomas Stover, M.D.'s Motion For Summary Judgment When There Were Genuine Issues of Material Fact With Respect To Plaintiffs' Medical Malpractice Claim. (R. 290).
 Appellants argue that, because there were genuine issues of material fact, the trial court erred in granting summary judgment. This Court disagrees.
In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court.Perkins v. Lavin (1994), 98 Ohio App.3d 378, 381. Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Id. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
In his summary judgment motion, Dr. Stover argued that he did not owe a legal duty to Lownsbury or Rebecca because a physician-patient relationship was never established, and, absent a duty, the appellants' cause of action fails. Appellants argued that they were entitled to pursue their medical malpractice claim because a physician-patient relationship had been established by express and implied contracts.
To establish a medical malpractice action, a plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the injury.Littleton v. Good Samaritan Hosp. Health Center (1988), 39 Ohio St.3d 86,92 (discussing the elements necessary to establish an underlying medical malpractice claim in a survivorship action). "In a medical malpractice case, the existence of a duty is dependent on whether there was a physician-patient relationship."Pena v. N.E. Ohio Emergency Affiliates (1995), 108 Ohio App.3d 96, citing Ryne v. Garvey (1993), 87 Ohio App.3d 145, 155. "`[T]he existence of a duty in a negligence action is a question of law for the court to determine.'" Spence v. Oberlin Laundry DryCleaners, Inc. (Oct. 7, 1998), Lorain App. No. 97CA006913, unreported, quoting Mussivand v. David (1989), 45 Ohio St.3d 314,318.
In support of their contention that summary judgment should not have been granted, appellants point to the deposition testimony of two doctors. The doctors expressed their opinion that Dr. Stover was obligated to supervise the residents working in labor and delivery and to make required contact with patients, that Dr. Stover failed to do so, that in failing to do so Dr. Stover failed to meet the minimum standard of care, and that as a result, Dr. Stover caused Rebecca's injuries. Appellants assert that this expert testimony "alone entitles [them] to maintain their medical malpractice claim against Dr. Stover." For additional support, appellants cite to various medical standards and regulations, such as the standards of the Accreditation Council on Graduate Medical Education.
Discussing the nature of the physician-patient relationship, the Ohio Supreme Court held that:
 The physician-patient relationship arises out of an express or implied contract which imposes on the physician an obligation to utilize the requisite degree of care and skill during the course of the relationship. The relationship is a consensual one and is created when the physician performs professional services which another person accepts for the purpose of medical treatment.
 The physician-patient relationship is a fiduciary one based on trust and confidence and obligating the physician to exercise good faith. As a part of this relationship, both parties envision that the patient will rely on the judgment and expertise of the physician. The relationship is predicated on the proposition that the patient seeks out and obtains the physician's services because the physician possesses special knowledge and skill in diagnosing and treating diseases and injuries which the patient lacks. (Citations omitted.)
 Tracy v. Merrell Dow Pharmaceuticals (1991), 58 Ohio St.3d 147, 150. The fact that appellants' experts believe that Dr. Stover breached a standard of care does not establish the existence of a duty for purposes of a medical malpractice claim, nor do the regulations and standards cited by appellants. In a medical malpractice claim, evidence concerning the appropriate standard of care and breach of duty are only relevant after a duty is established because the duty of care owed by a physician to a patient arises out of the physician-patient relationship. The duty of care does not exist in the absence of a physician-patient relationship.
The physician-patient relationship is one of a personal nature. It is a relationship based on the trust of the patient and the services of the doctor. In order to establish a physician-patient relationship there must be some contact between the doctor and the patient. This may be direct or indirect where the doctor takes an active part in diagnosing or treating the patient even without the patient's knowledge. Dr. Stover's advice was never sought by any of the resident-physicians or the specialist. Taking the appellants' argument to its conclusion would be to hold the medical director of any department responsible for other doctors' patients despite the fact that the medical director had never seen or treated the patient or advised the treating doctor.
Appellants also aver that summary judgment was improper because a physician-patient relationship was established by virtue of an express and an implied contract. At the time in question, Dr. Stover was under contract with the East Market Group ("EMG"), an organization of obstetricians who had contracted with ACH to provide twenty-four hour attending and supervisory functions over ACH's residents. Appellants assert that pursuant to the contract between EMG and ACH, Dr. Stover was responsible to supervise the residents who cared for Lownsbury, and that this contract created a physician-patient relationship by implied contract. Appellants contend that a physician-patient relationship was also established by express contract on January 6, 1995, when Dr. Stover was the attending physician and Lownsbury signed a consent to treatment form, because the form stated that "the patient will be under the care of a Medical Doctor called the attending physician who arranges for services and care of the patient."
Appellants state that "Ohio law has long held that the physician-patient relationship arises out of an express or implied contract," and, therefore, despite the fact that Dr. Stover did not treat, diagnose, consult, or know of Lownsbury's existence, a physician-patient relationship was established by the ACH-EMG contract and the consent form. In support, appellants cite to this Court's decision in Pena, supra, and McKinney v. Schlatter,M.D. (1997), 118 Ohio App.3d 328. However, both of those cases are markedly distinguishable from the present case. Although the physician in McKinney did not have any direct contact with the patient, the physician was actively involved in the patient's care. In Pena the physician was consulted, had agreed to provide coverage for the patient's primary physician, and permitted the patient to be admitted under his name.
The necessary element missing in appellants' argument is the nexus between the doctor and the patient. The contract between a hospital and doctor does not in and of itself create a doctor-patient relationship between that doctor and all the patients that come to the hospital. While the consent form signed by Lownsbury may establish a contract between Lownsbury and the hospital, it fails to establish a contract between the Lownsbury and Dr. Stover. This is because there is a conspicuous absence of an acceptance by Dr. Stover. Had Dr. Stover undertaken some form of service to Lownsbury, there may have been an implied acceptance. However, that is not the case.
This Court notes that there is a dispute over three separate issues: (1) whether the provisions of the EMG-ACH contract, signed in 1992, were still in effect at the time in question; (2) whether Lownsbury signed the consent form on January 6, 1995; and (3) whether Dr. Stover was an attending physician or an "on-call" physician on January 6, 1995. These issues are not material to this case, however, because what is not in dispute is that Dr. Stover never saw, evaluated, treated, consulted, or knew that Lownsbury was in the hospital.
This Court is mindful of the Ohio Supreme Court's explanation that the physician-patient relationship "is created when the physician performs professional services which another person accepts for the purpose of medical treatment," and that it "is predicated on the proposition that the patient seeks out and obtains the physician's services," Tracy, supra. Therefore, this Court declines appellants' request to find that, as a matter of law, a physician-patient relationship exists between a supervisory physician and each and every patient who is seen in his or her department while he or she is on duty.
Accordingly, construing the evidence most strongly in favor of appellants, this Court finds that reasonable minds could not have found that Dr. Stover owed a duty to Lownsbury or Rebecca.[2] Therefore, the grant of summary judgment was appropriate.
 III.
The judgment of the common pleas court is hereby affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
 _______________ LYNN C. SLABY
SLABY, P.J., BATCHELDER, J., CONCUR.
[1] The original complaint did not name Dr. Stover as a party, but was later amended to include him as a defendant.
[2] Appellants also argue, for the first time on appeal, that Dr. Stover is liable for medical malpractice under the doctrine of respondeat superior. However, this Court will not consider a claim that was not raised in the trial court. SeeState v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus.