DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Kenmore Construction Company ("Kenmore") and plaintiff East Ohio Gas Company ("East Ohio") have both appealed from a judgment entered in the Summit County Court of Common Pleas, adopting the magistrate's decision in this case. Pursuant to the magistrate's decision, the trial court awarded partial judgment of certain stipulated damages to East Ohio and Kenmore, but dismissed all remaining claims asserted by East Ohio against Kenmore and by Kenmore against third-party defendant Central Locating Services, Ltd. ("CLS"). Kenmore has also appealed from orders granting summary judgment to East Ohio on Kenmore's counterclaims and denying Kenmore's motion for default judgment against East Ohio. This Court affirms in part and reverses in part.
 I.
This case originated in January of 1994, in the Small Claims Division of Akron Municipal Court with the filing of a series of claims by East Ohio alleging that Kenmore had negligently damaged East Ohio's underground utility lines in the course of excavating eight different locations. The cases were consolidated and transferred to Summit County Court of Common Pleas in February 1994, after Kenmore filed a counterclaim against East Ohio for an amount in excess of the small claims court's jurisdictional limit. The counterclaim asserted that Kenmore had suffered economic losses as a result of East Ohio's negligent failure to designate the location of its underground facilities after Kenmore had requested the information. It also alleged a claim on account for those damages. Ultimately, sixty-nine separate sites where gas lines had been disturbed during excavation between 1992 and 1995 were put at issue. According to the magistrate's decision, this number had been reduced by stipulation and various court rulings to twenty-seven sites by the end of the trial.[1] CLS, a firm employed by East Ohio to mark the location of its underground utility lines, was brought into the fray when Kenmore filed a third-party complaint alleging that CLS failed to properly designate the location of these lines pursuant to its contract with East Ohio.[2]
On March 11, 1998, the trial court granted summary judgment to East Ohio on Kenmore's counterclaims. In a separate order filed that same day, the trial court denied CLS' motion for summary judgment on the third-party claim. The case proceeded to trial before the magistrate on March 16, 1998, on East Ohio's claims against Kenmore and Kenmore's third-party claims against CLS.
Both East Ohio and Kenmore filed objections to the magistrate's decision that was issued June 25, 1998. A final appealable order adopting the magistrate's decision was ultimately entered on September 24, 1999, after this Court raised a question about the finality of the order from which an appeal had been taken.[3] This is the order that is the subject of the instant appeal.
The assignments of error have been rearranged for ease of discussion. Further details will be provided as necessary.
 II. Kenmore's Assignment of Error II The trial court erred in denying Kenmore's motion for default judgment against East Ohio Gas on Kenmore's amended counterclaim.
Kenmore argues that its motion for default judgment should have been allowed because East Ohio was improperly permitted to file a response beyond the rule date without filing a motion for leave to plead, and without showing excusable neglect. However, under the facts of this case, East Ohio's reply to the amended counterclaim was timely filed pursuant to the magistrate's order.
Civ.R. 12(A)(2) provides, in pertinent part:
 The plaintiff shall serve his reply to a counterclaim in the answer within twenty-eight days after service of the answer or, if a reply is ordered by the court, within twenty-eight days after service of the order, unless the order otherwise directs.
(Emphasis added.) According to this rule, the time for replying to a counterclaim is twenty-eight days after service of the defendant's answer, but the court may set another date by which the reply is to be filed.
The record shows that East Ohio filed a response to Kenmore's initial counterclaim on April 11, 1994, in the Small Claims Court before the action was transferred to the Court of Common Pleas. East Ohio did not respond, however, to Kenmore's amended counterclaims, filed in May and October of 1995. The fact that East Ohio had not replied to these amended counterclaims apparently was not discovered until just prior to the March 16, 1998 date set for trial.
In an affidavit attached to Kenmore's motion for default judgment, counsel for Kenmore stated that the magistrate informed him of the omission on February 26, 1998. An order prepared by the magistrate and submitted to this Court pursuant to App.R. 9(C) states:
 4) On March 6, 1998, it was brought to the Magistrate's attention that the amended counterclaim had not been answered. At that time the Magistrate told East Ohio's counsel to file an answer to the amended counterclaim by the following Monday, March 9, 1998.
Prior to discovery of the omission, both sides had engaged in extensive discovery; Kenmore had vigorously defended against East Ohio's summary judgment motion. It is also significant that there was no motion for default judgment pending when the magistrate issued its instructions to East Ohio, even though Kenmore had been made aware of the 1995 omission more than a week earlier.
Pursuant to those instructions, East Ohio filed an answer to the amended counterclaim on March 9, 1998. Since that reply was filed on the date specified by the court, it was not out of rule. Moreover, the timeliness of East Ohio's filing is not negated by the fact that Kenmore filed a motion for default judgment earlier that same day. According to Civ.R. 6(A), East Ohio's answer was timely, so long as it was filed by the end of the day specified in the magistrate's order.
For these reasons, Kenmore's second assignment of error is overruled.
 Kenmore's Assignment of Error I The trial court erred in granting East Ohio Gas Company's motion for summary judgment dismissing Kenmore's amended counterclaim.
Kenmore's amended counterclaim stated two claims against East Ohio. In Count I, Kenmore alleged that it had suffered economic losses as a result of East Ohio's negligent failure to properly designate the location of its underground utility facilities in the various construction sites at issue in this action. In Count II, Kenmore alleged that East Ohio owed it monies on open account for these losses. Neither count sought recovery for any physical injury or property damage. East Ohio was granted summary judgment on both counts.
This Court's review of the trial court's entry of summary judgment isde novo. Perkins v. Lavin (1994), 98 Ohio App.3d 378, 381. Summary judgment is proper pursuant to Civ.R. 56(C) if:
 (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. See, also,Dresher v. Burt (1996), 75 Ohio St.3d 280.
In the instant case, East Ohio moved for summary judgment on Kenmore's negligence claim, arguing that Kenmore could not establish that its indirect economic damages are collectable in tort because Ohio law prohibits the recovery of purely economic losses in a tort action where there is no showing of personal injury or property damage. Kenmore argued that where the facts demonstrate that a sufficient nexus exists to substitute for privity of contract between the parties, Ohio law allows for the recovery of indirect economic damages in a negligence action without proof of physical injury or property damage.
The trial court agreed with East Ohio, relying upon the pronouncement in Queen City Terminals v. General American Transportation Corp. (1995),73 Ohio St.3d 609, wherein the Supreme Court of Ohio held:
 In order to recover indirect economic damages in a negligence action, the plaintiff must prove that the indirect economic damages arose from tangible physical injury to persons or from tangible property damage. Indirect economic damages that do not arise from tangible physical injury to person or from tangible property may only be recovered in contract.
Id. at 615.
However, this Court finds Queen City inapplicable as the precise issue involved in Queen City was whether "indirect economic losses are recoverable in tort when a physical injury or other direct property damage has also been sustained." Id. at 614.
The general rule is that "in the absence of privity of contract between two disputing parties * * * `there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.'" Queen City, supra, at 615, citing Floor Craft Floor Covering,Inc. v. Parma Community Gen. Hosp. Assn. (1990), 54 Ohio St.3d 1, 3, quoting Prosser Keeton, Law of Tort (5 Ed. 1984), 657, Section 92.
"Privity * * * serves * * * to identify an interest or establish a relationship necessary to allow for the bringing of a tort action for purely economic damages." Foster Wheeler v. Enviresponse, Inc. v.Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353,365-366.
Therefore, where privity of contract or its substitute exist, purely economic losses may be recovered in a tort action. See Floor Craft FloorCovering, Inc. v. Parma Comm. Gen. Hosp. Assn. (1990), 54 Ohio St.3d 1,8. In a case factually similar to the one at hand, the Third District also held that purely economic losses may be recovered in a negligence action where privity or a sufficient nexus to substitute for privity is established. See United Telephone Co. of Ohio v. Williams Excavating,Inc. (1997), 125 Ohio App.3d 135.
Kenmore asserted that a sufficient nexus exists to substitute for privity, and therefore Kenmore can recover purely economic damages in its negligence action. Kenmore set forth three theories upon which it can show that a sufficient nexus exists. First, Kenmore argued that a sufficient nexus is created by R.C. 153.64 and 3781.29. R.C. 153.64
creates a mandatory statutory duty for a utility owner, such as East Ohio, to mark or otherwise designate the location of its underground utility facilities within forty-eight hours after it receives notice from the contractor that construction operations will begin in the area. R.C.3781.29 imposes duties upon excavators and utility companies for locating utilities where private improvements are involved. Second, Kenmore asserted that a sufficient nexus to substitute for privity of contract exists because the trial court found that Kenmore is a third-party beneficiary of the locating contracts between East Ohio and CLS. Finally, Kenmore averred that a sufficient nexus is established because East Ohio exercised direct control and supervision over the locating of its underground utility facilities. Because it was East Ohio's contention that Kenmore could not recover purely economic damages in its negligence action, East Ohio did not present any evidence to refute Kenmore's claim that a sufficient nexus to substitute for privity of contract exists.
This Court finds that East Ohio failed to meet its burden underDresher, and therefore summary judgment was improperly granted on Kenmore's counterclaim for negligence. See Dresher, supra.
On Kenmore's account claim, the trial court granted summary judgment to East Ohio on Kenmore's account claim on grounds that there was no contractual relationship, either in fact or by implication, between East Ohio and Kenmore that could give rise to a claim of an open account. Since the evidence is conflicting on this question and reasonable minds could differ, the trial court's grant of summary judgment on the account claim must be overruled.
Kenmore's second amended counterclaim asserted that East Ohio owed Kenmore $116,208.29 on open account, after applying all credits and setoffs. In support of its memorandum in opposition to East Ohio's motion for summary judgment on this claim, Kenmore submitted the affidavit of Thomas A. Scala, whose job includes reviewing damage claims brought by utilities against Kenmore. In the affidavits, Mr. Scala averred that:
 For years there was a course of dealing between East Ohio Gas and Kenmore whereby they agreed to keep their yearly invoices directed to each other until a certain time of the year and then resolve their accounts.
* * *
 The invoices that are the subject of Kenmore's account claim are based upon this agreement between East Ohio Gas and Kenmore to retain their invoices and then resolve them all at once. Based upon the agreement between the parties, East Ohio Gas permitted Kenmore to continue to charge from May 21, 1992 on the open account of East Ohio Gas for its negligent acts. Only after an impasse was reached between the parties in late 1994 did East Ohio Gas refuse to pay its account to Kenmore. This led Kenmore to bring its claim on account against East Ohio Gas.
As further evidence of the existence of an agreement between the parties, Mr. Scala attached to his affidavit a letter from Robert Zufall, claims manager at East Ohio Gas, asking when a meeting might be scheduled to resolve damage claims "invoiced" by East Ohio to Kenmore. Copies of documents listing invoice numbers, addresses, and dates, as well as amounts due and interest purportedly owed by East Ohio on each claim, are attached to the second amended counterclaim. Mr. Zufall, in an affidavit submitted by East Ohio, denied that there was any contract between East Ohio and Kenmore.
An action on an account is appropriate where the parties have conducted a series of transactions, for which a balance remains to be paid. AMF,Inc. v. Mravec (1981), 2 Ohio App.3d 29, 31, citing Dykeman v. Johnson
(1910), 83 Ohio St. 126. Such action is founded on a contract, express or implied. American Security Service v. Baumann (1972), 32 Ohio App.2d 237,243-244. To establish a contract implied in fact, a party must demonstrate that circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended. Stepp v. Freeman
(1997), 119 Ohio App.3d 68, 74.
Here, the documents referred to above, all properly before the court pursuant to Civ.R. 56(C), could be viewed as an account of amounts owed. Kenmore does not assert the existence of an express contract. Reasonable minds could conclude from the evidentiary materials presented here, however, that an agreement to resolve the invoices pending against both was intended. The trial court discounted Kenmore's assertion that a "course of dealing" between the parties over the years could constitute an agreement to resolve amounts owed. However, in Brown v. ColumbusStamping and Mfr. Co. (1967), 9 Ohio App.2d 123, 125, the court referred to a "mutual running account" maintained by the parties as "mutual dealing over a period of time [that] is basically contractual." (Emphasis added.) Therefore, a "course of dealing" could reflect a contractual relationship between the parties. Since reasonable minds could differ on the matter, the trial court erred in granting summary judgment on Kenmore's account claim.
Accordingly, Kenmore's assignment of error is sustained.
 East Ohio's Assignment of Error I The trial court erred in adopting the magistrate's decision, which imposed a duty upon East Ohio to mark the actual depth of its lines and found that East Ohio did not comply with its statutory duties regarding marking of the depth of its lines.
 East Ohio's Assignment of Error II The trial court erred in adopting the magistrate's decision, which found that East Ohio waived the statutory requirements imposed upon Kenmore.
 Kenmore's Assignment of Error III
The trial court erred in adopting the magistrate's decision.
Because East Ohio's first and second assignments of error and Kenmore's third assignment of error all challenge the trial court's adoption of the magistrate's decision, they will be addressed together.
Assignments of error arising out of the trial court's adoption of the magistrate's decision after trial must comply with Civ.R. 53(E)(3)(b), which provides, in part:
 Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule.
 Although both Kenmore and East Ohio raised timely objections to the magistrate's decision, neither provided the trial court with a transcript of proceedings or a proper substitute as required by the rule. Because the transcript was not attached to the parties' objections to the magistrate's decision, the trial court could properly adopt the magistrate's factual findings without further consideration. Purpura v. Purpura (1986), 33 Ohio App.3d 237, 239.
The trial court also refused to consider an affidavit submitted by Kenmore, together with copies of letters exchanged between the affiant and an East Ohio employee. This Court has previously construed Civ.R. 53(E)(3)(b) to mean that a party may support his objections with an affidavit in lieu of a transcript only when: 1) he demonstrates that a transcript is not available, and 2) the affidavit describes all the relevant evidence presented at the hearing, not just the evidence that the party feels is significant. See Csongei v. Csongei (July 30, 1997), Summit App. No. 18143, unreported. Kenmore failed to satisfy either of these requirements. Therefore, the court properly refused to consider the additional evidentiary materials submitted.
The Ohio Supreme Court has established the parameters of appellate review under these circumstances:
 When a party objecting to a referee's report has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the report, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the referee's report, and the appellate court is precluded from considering the transcript of the hearing submitted with the appellate record. * * * In other words, an appeal under these circumstances can be reviewed by the appellate court to determine whether the trial court's application of the law to its factual findings constituted an abuse of discretion.
(Citations omitted.) State ex. rel. Duncan v. Chippewa Twp. Trustees
(1995), 73 Ohio St.3d 728, 730. An appellate court will reverse the trial court's determination only where it appears that the trial court's actions were arbitrary or unreasonable. Bell v. Bell. (June 24, 1998), Medina App. No. 2680-M, unreported.
In the decision adopted by the trial court, the magistrate concluded that:
 [T]he strongly compelling evidence establishes that Kenmore and East Ohio have * * * waived the statutory requirements as established by the two Revised Code sections. They have set the custom and standard in the area which does not conform to the statutes.
Both East Ohio and Kenmore objected to the magistrate's application of waiver to dismiss claims based upon their interpretations of R.C. 153.64
and R.C. 3781.25 et seq. Whether a statutory provision may be waived through a party's conduct is a legal issue. Ward v. Hengle (1997),124 Ohio App.3d 396, 400. Accordingly, we must consider whether the trial court properly applied the law of waiver to the facts as found by the magistrate.[4]
Kenmore and East Ohio contend that the magistrate's application of waiver violates public policy. Under Ohio law, a person may not waive rights or privileges conferred by statute if such waiver would constitute a violation of public policy. Hess v. Akron (1937), 132 Ohio St. 305. Kenmore argues that public policy requires performance of statutory obligations that, if not performed, could result in serious bodily harm or death to members of the general public. While Kenmore has correctly stated the law, there is nothing here to support a contention that the statutes at issue were enacted for the protection of the general public. Rather, it appears from the captions, as well as from various provisions of the statutes, that the acts were promulgated simply for the protection of underground utility facilities.
Since R.C. 153.64 and R.C. 3781.25 et seq. were enacted for the protection of underground utility facilities, the benefits conferred are personal rights belonging to the utility owners of the facilities and to excavators whose work in the vicinity of such facilities may be interrupted if the facilities are disturbed. Both have a personal interest in the protection of those facilities. Ohio law permits waiver of one's personal rights accorded by statute. State ex rel. Chuvalas v.Tompkins (1998), 83 Ohio St.3d 171, 173. Thus, it is not violative of public policy to waive such personal rights conferred by statute.
Both East Ohio and Kenmore contend that the trial court abused its discretion in applying the statutory law to the magistrate's findings of fact. East Ohio asserts that the magistrate's decision was based upon an erroneous interpretation of a utility owner's duty pursuant to R.C. 153.64
and R.C. 3781.25 et seq.[5] This Court disagrees.
The pertinent provisions of both acts place primary responsibility for location of underground utility facilities upon the utility owner, after the owner has received notice that an excavation is planned in an area where utility facilities may be located. Although notice may be provided in different ways, depending upon the level of participation of the utility owner in an "underground utility protection service," once notice is received, each act requires the utility owner to respond within forty-eight hours. As to public projects, R.C. 153.64(C) states, in part:
 The owner of the underground utility facility, within forty-eight hours * * * after notice is received, shall
stake, mark, or otherwise designate the construction area in such a manner as to indicate their course together with the approximate depth at which they were installed.
(Emphasis added.) As to private projects, R.C. 3781.29 states:
 * * * [W]ithin forty-eight hours of receiving notice * * *, each utility shall locate and mark the approximate location of its underground utility facilities at the excavation site.* * * If the utility cannot accurately mark the approximate location, the utility shall mark the approximate location to the best of its ability, notify the excavator that the markings may not be accurate, and provide additional guidance to the excavator in locating the facilities as needed during the excavation.
(Emphasis added.) Despite the mandatory language employed by the General Assembly in both acts, East Ohio argues that it has no duty to provide an excavator with the depth of the line. Rather, East Ohio asserts that the statutory scheme imposes an obligation upon the excavator to discover the actual location of the line. East Ohio relies upon language of R.C.3781.30 to support this position. R.C. 3781.30, part of the act governing private projects, provides in pertinent part:
 When making excavations, the excavator shall do all of the following: (A) Maintain reasonable clearance between any underground facility and the cutting edge or point of powered equipment; * * * (C) When approaching underground utility facilities while excavating with powered equipment, require an individual other than the equipment operator, to look for any sign of the underground utility facility; (D) Conduct the excavation in the vicinity of the underground utility facility in a careful and prudent manner, excavating by hand, if necessary, to determine the precise location of the facility and to prevent damage * * *.
 East Ohio also notes that R.C. 3781.29 states, "[u]nless a facility actually is uncovered or probed by the utility, any indications of the depth of the facility shall be treated as estimates." According to East Ohio, this means that its responsibility under the statutes is met when it has informed the excavator of the usual depth at which such a facility is installed.
However, a close reading of R.C. 3781.30 refutes East Ohio's interpretation of the statute's provisions. This statute does not impose the duty of locating underground lines on the excavator. It simply establishes a standard of care for excavation in private projects, after
the excavator has been supplied with reasonably accurate information as to the approximate location of the lines. R.C. 3781.30(A), (C), and (D) all require some responsive action on the part of the excavator only when there is knowledge of proximity of a line. An excavator cannot "maintain reasonable clearance between any underground facility and the cutting edge or point of powered equipment," as provided in Subsection (A), when he does not have any idea at what depth the underground facility may be located. Nor can an excavator know when he is "approaching underground facilities," necessitating assistance in looking for signs of a line, as provided in Subsection (C), if he has not been provided with some indication of its location. Even Subsection (D) requires an excavator to commence digging by hand only when he knows he is in the "vicinity" of the underground facility.
While the provisions for public and private improvement projects were enacted at different times and differ somewhat in the details, the statutory scheme in each is essentially the same. Each act contemplates that the utility owner, as the party that installed the underground facility, will be primarily responsible for providing reasonably accurate information as to the approximate location of the line, at least at the time it was installed. R.C. 153.64(C) and 3781.29(A)(1). That information must be sufficient to enable the excavator to proceed cautiously in pinpointing the actual location, so that the line will not be damaged.
That the primary responsibility lies with the utility owner is supported by a provision in the public improvement act. R.C. 153.64(D) actually relieves an excavator in a public improvement project of liability, where proper notice is provided to the utility owner, pursuant to the statutory requirements:
 [A]ny contractor or its subcontractor who complies with the [notice] requirements of [this statute] shall not be responsible to the owner of the underground utility facility if underground utility lines are encountered not as marked in accordance with the provisions of division (C) of this section by the owner of the underground utility facility, unless the contractor or its subcontractor has actual notice of the underground utility facility.
(Emphasis added.) See, e.g., United Telephone Co. of Ohio v. C.J. MahanConstr. Co. (1989), 63 Ohio App.3d 437, 440; Ohio Edison Co. v. WartkoConstr. (1995), 103 Ohio App.3d 177, 180 ("Compliance with [R.C.3781.28(B)] by timely notification would have fulfilled [excavator's] duty to inform itself of the location of any underground utility equipment.").
This Court agrees with the magistrate's interpretation of the statutory scheme and concludes that the trial court did not abuse its discretion in applying the law to the magistrate's factual findings. For these reasons, East Ohio's first and second assignments of error are overruled.
Having determined that the trial court did not abuse its discretion in applying the law to the magistrate's factual findings and dismissing East Ohio's negligence claims against Kenmore, this Court must now decide if the trial court abused its discretion in applying the law to the magistrate's factual findings to support dismissal of Kenmore's third-party beneficiary claims against CLS. In order to make this determination, this Court must review what rights Kenmore is asserting that may be subject to waiver.
Kenmore's claim against CLS is that it is the intended beneficiary of locating contracts between East Ohio and CLS, wherein CLS agreed to provide information to Kenmore as to the location of East Ohio's underground facilities at the planned excavation sites. Kenmore alleges that it was injured as a result of CLS' failure to properly designate the location of such underground facilities pursuant to its contracts with East Ohio.
Only a party to a contract or an intended third-party beneficiary may bring an action on a contract. Thornton v. Windsor House, Inc. (1991),57 Ohio St.3d 158, 161. Since Kenmore was not a party to the contracts between East Ohio and CLS, it must appear that the parties intended Kenmore to receive a benefit under their agreement in order for Kenmore to succeed on its claim. Laverick v. Children's Hosp. Medical Ctr. ofAkron (1988), 43 Ohio App.3d 201, 204. A third party who simply receives a benefit from an agreement, without more, is only an incidental beneficiary and may not sue under the contract. Visintine Co. v. NewYork, Chicago St. Louis Rd. Co. (1959), 169 Ohio St. 505, 507.
In 1988, the Ohio Supreme Court adopted Section 302 of the Restatement of the Law 2d, Contracts, (1981), 439-440, establishing principles governing intended and incidental beneficiaries. Hill v. Sonitrol ofSouthwestern Ohio, Inc. (1988), 36 Ohio St.3d 36, 40. Section 302 states:
 (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
 (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
 (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
 (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
The Ohio Supreme Court also quoted Comment (e) to Section 302: "Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created. * * *" Id.
Under the circumstances, Kenmore would be considered an intended beneficiary of the locating contracts between East Ohio and CLS, pursuant to Section 302(1)(b) of the Restatement. The sole purpose of these contracts was to satisfy East Ohio's duty to provide information requested by Kenmore as to the location of East Ohio's underground facilities in the planned excavation sites. East Ohio obviously intended to give Kenmore the "benefit of the promised performance" (i.e., information as to the location of the lines) and CLS certainly understood that Kenmore was to be the ultimate recipient of that information.
However, as the magistrate properly concluded, Kenmore waived its right to enforce East Ohio's duty to mark the approximate depth of the lines by undertaking to excavate at the sites, even though Kenmore employees knew that the information provided to them was not reasonably accurate. If Kenmore cannot enforce East Ohio's duty to provide information as to the approximate depth of the lines, it cannot claim loss for CLS' failure to provide such information. Therefore, the trial court did not abuse its discretion in applying the law to the magistrate's factual findings and dismissing Kenmore's third-party beneficiary claim against CLS.
Kenmore's third assignment of error is overruled.
 East Ohio's Assignment of Error III The trial court erred in finding that Kenmore was a third-party beneficiary to the contracts between East Ohio and CLS.
East Ohio also asserts error in the trial court's finding, both in its grant of summary judgment for East Ohio on Kenmore's counterclaims and in the magistrate's decision, that Kenmore was a third-party beneficiary to the contracts between East Ohio and CLS. It is unnecessary to consider this assignment of error, since the issue has been rendered moot by this Court's conclusion that Kenmore waived its right to assert a third-party beneficiary claim against CLS.
 III.
Kenmore's first assignment of error is sustained. Kenmore's second and third assignments of error are overruled. East Ohio's first and second assignments of error are overruled. East Ohio's third assignment of error is dismissed as moot. Accordingly, the matter is remanded to the trial court for further proceedings consistent with this decision.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to East Ohio Gas Company and Kenmore Construction Company, Inc., equally.
Exceptions.
___________________________ DONNA J. CARR
BATCHELDER, P. J., SLABY, J., CONCUR.
[1] This number is questioned by East Ohio, who claims only twenty-six sites were still in dispute at the time trial commenced.
[2] Kenmore brought similar third-party claims against two other firms that provide such services. Both were ultimately dismissed.
[3] An order purporting to adopt the magistrate's decision was first entered March 8, 1999. On March 19, 1999, the trial court granted Kenmore's motion for relief from that judgment, but nonetheless overruled the parties' objections and again adopted the magistrate's decision. Kenmore filed an appeal from this order on April 16, 1999. (C.A. No. 19567) This Court challenged the March 19, 1999 order as lacking finality in that it did not expressly grant relief on issues submitted to the trial court. On September 24, 1999, in response to a show cause order from this Court, the trial court entered an order to satisfy the requirements of R.C. 2505.02. On September 28, 1999, East Ohio filed a notice of appeal from the new order. (C.A. No. 19790) This Court consolidated these appeals.
[4] Both East Ohio and Kenmore urge this Court to find that the magistrate's conclusion that both sides waived their right to recover damages by their conduct was not supported by the evidence. However, since this Court is precluded from reviewing the evidence by appellants' failure to provide the transcript to the trial court, that issue is foreclosed.
[5] R.C. 153.64, governing improvement projects promulgated by a public authority, was enacted in 1982. R.C. 3781.25 et seq. was enacted in 1989, to provide a similar plan for protection of underground utility facilities in private improvement projects. Both kinds of projects were involved here.