PERKINS, Appellant,

v.

LAVIN et al., Appellees.

[Cite as *Perkins v. Lavin* (1994), 98 Ohio App.3d 378.]

Court of Appeals of Ohio,
Summit County.

No. 16296.

Decided June 29, 1994.

*Roger K. Davidson,* for appellant.

*Richard R. Strong,* for appellees Justin Lavin, Jr., M.D., and Akron City Hospital.

---

DICKINSON, Judge.

Plaintiff Bonita Perkins has appealed from an order of the Summit County Court of Common Pleas that granted defendant Akron City Hospital's motion for summary judgment and dismissed her complaint against it. She has argued that

the trial court (1) incorrectly determined that she was required to comply with R.C. 2307.42, and (2) incorrectly determined that there was not a genuine issue of material fact and that defendant was entitled to judgment as a matter of law on her claims against it for assault and battery and intentional infliction of emotional distress. This court reverses the order of the trial court in regard to plaintiff's assault and battery claim because (1) the Ohio Supreme Court declared R.C. 2307.42 invalid in *Hiatt v. S. Health Facilities, Inc.* (1994), 68 Ohio St.3d 236, 626 N.E.2d 71, and (2) the trial court's determination that defendant was entitled to judgment as a matter of law on plaintiff's assault and battery claim was incorrect. This court affirms the order of the trial court as it relates to plaintiff's intentional infliction of emotional distress claim because plaintiff failed to submit evidence that defendant had engaged in conduct that was extreme or outrageous.

## I

Plaintiff is a Jehovah's Witness. She gave birth to a baby at defendant hospital on September 26, 1991, and was discharged two or three days later. After going home, she began hemorrhaging and was forced to return to the hospital. She specifically informed defendant's employees that she was not to be provided any blood or blood derivatives and completed and signed a form to that effect:

"I REQUEST THAT NO BLOOD OR BLOOD DERIVATIVES BE ADMINISTERED TO [PLAINTIFF] DURING THIS HOSPITALIZATION, NOTWITHSTANDING THAT SUCH TREATMENT MAY BE DEEMED NECESSARY IN THE OPINION OF THE ATTENDING PHYSICIAN OR HIS ASSISTANTS TO PRESERVE LIFE OR PROMOTE RECOVERY. I RELEASE THE ATTENDING PHYSICIAN, HIS ASSISTANTS, THE HOSPITAL AND ITS PERSONNEL FROM ANY RESPONSIBILITY WHATEVER FOR ANY UNTOWARD RESULTS DUE TO MY REFUSAL TO PERMIT THE USE OF BLOOD OR ITS DERIVATIVES."

Due to plaintiff's condition, it became necessary to perform an emergency dilatation and curettage on her. Plaintiff continued to bleed and her condition deteriorated dramatically. Her blood count dropped, necessitating administration of blood products as a life-saving measure. Her husband, who is not a Jehovah's Witness, consented to a blood transfusion, which was administered. Plaintiff recovered and filed this action against defendant for assault and battery and intentional infliction of emotional distress.

Defendant moved to dismiss plaintiff's complaint on January 19, 1993, arguing that she had failed to comply with R.C. 2307.42 because she had not attached an affidavit to her complaint indicating that she had consulted with a physician prior to instituting her claim or explaining why she was excused from doing so. The

trial court issued an order on February 19, 1993, converting defendant's motion to dismiss into a motion for summary judgment and affording both parties an opportunity to submit additional materials. Defendant filed a supplemental memorandum in support of motion for summary judgment in which it argued that it was entitled to judgment as a matter of law on plaintiff's assault and battery claim because it had not intended to "inflict personal injury" on her. It also argued that it was entitled to judgment as a matter of law on plaintiff's intentional infliction of emotional distress claim because it had not engaged in "extreme and outrageous conduct." Following the filing of a response by plaintiff, the trial court granted defendant's motion for summary judgment dismissing plaintiff's complaint. Plaintiff appealed the trial court's order to this court.

## II

### A

Plaintiff's first assignment of error is that the trial court incorrectly determined that she was required to comply with R.C. 2307.42. That section, in part, required a claimant in an action based upon a medical claim to attach an affidavit to her complaint indicating that she had consulted with a physician prior to instituting her claim or explaining why she was excused from doing so. In *Hiatt v. S. Health Facilities, Inc.* (1994), 68 Ohio St.3d 236, 626 N.E.2d 71, the Ohio Supreme Court declared R.C. 2307.42 invalid pursuant to Section 5(B), Article IV of the Ohio Constitution because it conflicted with Civ.R. 11. Accordingly, R.C. 2307.42 was not an appropriate basis for granting defendant's motion for summary judgment dismissing plaintiff's complaint. Plaintiff's first assignment of error is sustained.

### B

Plaintiff's second assignment of error is that the trial court incorrectly determined that there was not a genuine issue of material fact and that defendant was entitled to judgment as a matter of law on her claims against defendant for assault and battery and intentional infliction of emotional distress. In reviewing a trial court's grant of summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122.

1

In moving for summary judgment on plaintiff's assault and battery claim, defendant argued that it could not be held liable to plaintiff because it had not intended to "inflict personal injury" on plaintiff. In granting defendant's motion for summary judgment, the trial court held:

"There must be evidence that [defendant] intended to injure [plaintiff], or committed the act with the belief that such injury is substantially certain to occur. There was no evidence of such intent; in fact, the opposite must be inferred. [Defendant] performed the blood transfusion with the intent to preserve [plaintiff's] life, and not to cause her harm."

In arguing that it cannot be held liable for assault and battery if it did not intend to "inflict personal injury," defendant has misapprehended the gist of the tort of battery. Battery not only protects individuals from harmful contact, but protects them from any offensive contact:

"A harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, * * * is a battery." Prosser, Law of Torts (5 Ed.1984) 39, Section 9; see *Love v. Port Clinton* (1988), 37 Ohio St.3d 98, 99, 524 N.E.2d 166, 167.

"Battery" includes innocent intentional contact and even intentional contact meant to assist the complainant, if that contact is unauthorized:

"The defendant may be liable when intending only a joke, or even a compliment, as where an unappreciated kiss is bestowed without consent, or a misguided effort is made to render assistance." Prosser, Law of Torts (5 Ed.1984) 42, Section 9.

In this case, plaintiff specifically informed defendant that she would consider a blood transfusion offensive contact. Although both parties have noted that plaintiff's husband provided his consent for the transfusion, defendant has not, at least as yet, argued that his consent was sufficient to overcome plaintiff's direction that she was not to receive a transfusion. Plaintiff submitted sufficient evidence to the trial court to establish that there was, at least, a genuine issue whether defendant intentionally invaded her right to be free from offensive contact. Because of plaintiff's recognition that defendant acted to save her life, a jury may find that she is entitled to only nominal damages. Regardless of that, however, the trial court erred in granting defendant's motion for summary judgment dismissing plaintiff's assault and battery claim. That part of plaintiff's second assignment of error related to her assault and battery claim is sustained.

2

In moving for summary judgment on plaintiff's intentional infliction of emotional distress claim, defendant argued that it had not engaged in "extreme and outrageous conduct." A plaintiff may state a cause of action against a defendant who intentionally or recklessly engages in extreme and outrageous conduct causing the plaintiff to suffer serious emotional distress. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666. Not all conduct that disturbs a plaintiff's peace of mind, however, rises to the level of "extreme and outrageous." The Ohio Supreme Court has stated that " '[i]t would be absurd for the law to seek to secure universal peace of mind, and many interferences with it must of necessity be left to other agencies of social control.' " *Id.* at 374, 6 OBR at 425, 453 N.E.2d at 671, quoting Prosser, Law of Torts (4 Ed.1971) 51, Section 12. Conduct rises to the level of extreme and outrageous only if it goes beyond all bounds of decency and can be regarded as atrocious and intolerable in a civilized society. Generally, it must be conduct that would lead an average member of the community to exclaim, "Outrageous!" *Id.* at 374–375, 6 OBR at 425–427, 453 N.E.2d at 671–672, citing Restatement of the Law 2d, Torts (1965) 71, Section 46(1).

Defendant's conduct that plaintiff claimed was an intentional infliction of emotional distress on her was the provision of a blood transfusion that saved her life and provided her an opportunity to raise the baby girl to which she had given birth just days before. Rather than an average member of the community exclaiming that defendant acted outrageously by providing that transfusion, such a person would view it as outrageous if defendant had not provided it. Accordingly, there was no genuine issue of material fact and defendant was entitled to judgment as a matter of law dismissing plaintiff's claim for intentional infliction of emotional distress. That part of plaintiff's second assignment of error related to her intentional infliction of emotional distress claim is overruled.

III

Plaintiff's first assignment of error and that part of her second assignment of error related to her assault and battery claim are sustained. That part of plaintiff's second assignment of error related to her intentional infliction of emotional distress claim is overruled. This matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

Cook, P.J., and Reece, J., concur.