[Cite as *Meminger v. Ohio State Univ.*, 2017-Ohio-9290.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sherri Meminger, | : | |
| Plaintiff-Appellant, | : | No. 17AP-489 |
| | | (Ct. of Cl. No. 2016-00808) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Ohio State University, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 28, 2017

**On brief**: *Rosenberg & Ball Co.*, *LPA*, and *David T. Ball*, for appellant. **Argued**: *David T. Ball*.

**On brief**: *Michael DeWine*, Attorney General, *Lee Ann Rabe*, and *Howard H. Harcha*, *IV*, for appellee. **Argued**: *Lee Ann Rabe*.

APPEAL from the Court of Claims of Ohio

BROWN, J.

{¶ 1} This is an appeal by plaintiff-appellant, Sherri Meminger, from a judgment of the Court of Claims of Ohio dismissing her claim for intentional infliction of emotional distress pursuant to Civ.R. 12(B)(6).

{¶ 2} On November 2, 2016, appellant filed a complaint against defendant-appellee, The Ohio State University. In the complaint, appellant alleged she had been employed by appellee as an emergency room secretary at The Ohio State University Hospital East ("OSU East"), and that appellee had wrongfully terminated her for allegedly engaging in inappropriate, threatening, and retaliatory behavior toward staff members of the hospital. The complaint alleged causes of action for wrongful termination in violation of public policy and intentional infliction of emotional distress.

{¶ 3} On December 29, 2016, appellee filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6). On January 9, 2017, appellant filed a memorandum in opposition to appellee's motion to dismiss. By entry filed April 17, 2017, the Court of Claims granted appellee's motion to dismiss as to appellant's claim for intentional infliction of emotional distress, but denied appellee's motion to dismiss appellant's claim for wrongful termination in violation of public policy.

{¶ 4} On April 20, 2017, appellee filed a motion for summary judgment, arguing appellant could not pursue a claim for wrongful termination in violation of public policy because she was not an at-will employee. On May 17, 2017, appellant filed a memorandum in opposition to appellee's motion for summary judgment, asserting there were genuine issues of material fact as to her employment status. By decision filed June 7, 2017, the Court of Claims granted summary judgment in favor of appellee, finding appellant was not an employee-at-will and, therefore, could not state a claim for wrongful termination in violation of public policy as a matter of law.

{¶ 5} On appeal, appellant sets forth the following assignment of error for this court's review:

> The trial court erred in granting Appellee's Motion to Dismiss Appellant's claim for intentional infliction of emotional distress.

{¶ 6} At the outset, we note appellant does not challenge on appeal the Court of Claims' grant of summary judgment in favor of appellee as to her claim for wrongful termination in violation of public policy. Rather, appellant only challenges the Court of Claims' entry of partial dismissal, pursuant to Civ.R. 12(B)(6), of her claim for intentional infliction of emotional distress.

{¶ 7} Under Ohio law, "[a] motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Civ.R. 12(B)(6), tests the sufficiency of a complaint." *Sheldon v. Kettering Health Network,* 2d Dist. No. 26432, 2015-Ohio-3268, ¶ 5. In order for a defendant to prevail, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief." *Id.,* citing *O'Brien v. Univ. Community Tenants Union, Inc.,* 42 Ohio St.2d 242, 245 (1975). A court is required to construe the complaint "in the light most favorable to the plaintiff, presume

all of the factual allegations to be true, and make all reasonable inferences in the plaintiff's favor." *Id.,* citing *Mitchell v. Lawson Milk Co.,* 40 Ohio St.3d 190, 192 (1988). This court conducts a de novo review of a trial court's dismissal under Civ.R. 12(B)(6). *Id.,* citing *Grover v. Bartsch,* 170 Ohio App.3d 188, 2006-Ohio-6115, ¶ 16 (2d Dist.). Further, "[a] trial court may dismiss a claim for intentional infliction of emotional distress, pursuant to Civ.R. 12(B)(6), where the alleged conduct does not, as a matter of law, reach the level of 'extreme and outrageous' conduct." *Morrow v. Reminger & Reminger Co. LPA,* 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 48 (1oth Dist.).

{¶ 8} In support of her argument that the Court of Claims erred in dismissing her claim for intentional infliction of emotional distress, appellant points to the following allegations in the complaint. In August or September 2014, Dr. Thomas Terndrup was working a shift at OSU East while appellant was working as the emergency room secretary. During his shift, Dr. Terndrup "repeatedly threw paperwork on [appellant's] work area rather than hand it to her." (Compl. at ¶ 7.) After several such incidents, appellant "asked Dr. Terndrup to stop throwing paperwork at her, stating it was rude." (Compl. at ¶ 8.) In response, Dr. Terndrup "became very angry at [appellant] and stormed into the office of the OSU East Nurse Manager, Ken Groves, to whom he angrily complained about [appellant]." (Compl. at ¶ 9.) Dr. Terndrup "also complained to another doctor, Dr. Michael Dick," the head of the "OSU East doctor's group." (Compl. at ¶ 10.) According to appellant, "[f]rom that time on, [appellee] was waiting for an opportunity to terminate [appellant] in retaliation for standing up to Dr. Terndrup." (Compl. at ¶ 11.)

{¶ 9} It was further alleged on September 26, 2014, appellant and "ER Social Worker Sylvia Clarkson were having a typical, casual conversation about current events in the news." On that date, appellant and Clarkson "had discussed an incident of workplace violence that had been in the news." (Compl. at ¶ 12.) Clarkson "reported [appellant] for that conversation to Nurse Manager Ken Groves," despite the fact that Clarkson "stated that she did not feel threatened by [appellant]." (Compl. at ¶ 13.) Groves reported appellant's conversation with Clarkson "to Human Resources Administrative Director Thomas Ramey and OSU Wexner Medical Center Security, Lt. Wertz." (Compl. at ¶ 14.)

{¶ 10} According to the complaint, Groves and Ramey "seized upon what Ms. Clarkson had reported as an opportunity to terminate [appellant], despite [appellant's] satisfactory job performance record at that time." (Compl. at ¶ 15.) OSU security officers interviewed appellant, "who stated that she had just been talking about the news with Ms. Clarkson, and that she preferred not to state anything further." (Compl. at ¶ 16.) Appellant "was permitted to complete her shift that day and to work the next." (Compl. at ¶ 17.) On October 6, 2014, appellant was placed on administrative leave. On October 31, 2014, appellant "was charged with engaging in inappropriate, threatening and retaliatory behavior toward staff members." (Compl. at ¶ 19.)

{¶ 11} Appellant's complaint alleged appellee "had no legitimate basis to charge [appellant] with such conduct, or to terminate her on that basis." (Compl. at ¶ 20.) Further, that "claimed safety concerns about [appellant] were a pretext for its intent to terminate her for her prior interaction with Dr. Terndrup." (Compl. at ¶ 21.)

{¶ 12} In its entry of dismissal as to the claim for intentional infliction of emotional distress, the Court of Claims held in part:

> Making all reasonable inferences in favor of plaintiff, Dr. Terndrup's actions of throwing paperwork at her; his complaining about plaintiff's behavior to her supervisor; a coworker's complaints about plaintiff's conversation about workplace violence; and, termination of plaintiff's employment, does not rise to the level of extreme and outrageous conduct necessary to state a claim of intentional infliction of emotional distress. Accordingly, it appears beyond doubt that the assertions in plaintiff's complaint do not support a claim for intentional infliction of emotional distress.

{¶ 13} Appellant contends the trial court's decision omits reference to several significant allegations she made in support of her claim for intentional infliction of emotional distress, including allegations that: (1) after appellant asked Dr. Terndrup to stop throwing paperwork at her, he complained to appellant's supervisor and, from that time on, appellee was waiting for an opportunity to terminate her in retaliation for standing up to Dr. Terndrup, (2) appellant's co-worker did not feel threatened by a conversation with appellant regarding workplace violence, and (3) appellee brought baseless and pre-textual charges against appellant and used those as the basis for her

termination. According to appellant, had the Court of Claims taken these allegations as true, it could not have found that the conduct alleged was insufficiently extreme and outrageous.

{¶ 14} In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt.*, 71 Ohio St.3d 408, 410 (1994). The issue of whether conduct "rises to the level of 'extreme and outrageous' conduct constitutes a question of law." *Jones v. Wheelersburg Local School Dist.,* 4th Dist. No. 12CA3513, 2013-Ohio-3685, ¶ 41.

{¶ 15} In order to recover for a claim of intentional infliction of emotional distress under Ohio law, "it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Mendlovic v. Life Line Screening of Am., Ltd.,* 173 Ohio App.3d 46, 2007-Ohio-4674, ¶ 47 (8th Dist.). Rather, "[l]iability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.,* citing *Yeager v. Local Union 20, Teamsters,* 6 Ohio St.3d 369, 374-75 (1983). In general, "it must be conduct that would lead an average member of the community to exclaim, 'Outrageous!' " *Perkins v. Lavin,* 98 Ohio App.3d 378, 383 (9th Dist.1994), citing *Yeager* at 374-75, citing Restatement of the Law 2d, Torts, Section 46(1) (1965).

{¶ 16} An employer's termination of employment, "without more, does not constitute the outrageous conduct required to establish a claim of intentional infliction of emotional distress, even when the employer knew that the decision was likely to upset the employee." *Craddock v. Flood Co.,* 9th Dist. No. 23882, 2008-Ohio-112, ¶ 20. Further, "an employer is not liable for a plaintiff's emotional distress if the employer does no more than 'insist upon his legal rights in a permissible way, even though he is well aware that

such insistence is certain to cause emotional distress.' " *Wheelersburg Local School Dist.* at ¶ 42, quoting *Foster v. McDevitt,* 31 Ohio App.3d 237, 239 (2d Dist.1986).

{¶ 17} Ohio courts, including this court, have reviewed claims for intentional infliction of emotional distress in the context of an employee's termination following an investigation into purported workplace wrongdoing. In *Branan v. Mac Tools*, 10th Dist. No. 03AP-1096, 2004-Ohio-5574, the appellant was terminated by his employer following an investigation into confidential information leaks. The appellant brought an action against his employer alleging various claims, including wrongful discharge and intentional infliction of emotional distress. In asserting his claim for intentional infliction of emotional distress, the appellant presented evidence that: (1) his employer "interrogated [him] for several hours," (2) that his employer "twice refused" his requests to leave, (3) that the employer's "Asset Protection Team members exhibited some degree of physical intimidation, and repeatedly called him a liar and a corporate spy," (4) that the employer "threatened appellant by telling him that he would never get another job in the industry and would be unable to feed his child," and that (5) the employer or the Asset Protection Team "went through appellant's personal belongings in his office and briefcase, and observed appellant's home and took pictures of the home and vehicles parked in front of the home." *Id.* at ¶ 30.

{¶ 18} In considering the evidence alleged, this court held in part: "Without characterizing these actions with respect to the other torts that they may constitute, while they are perhaps reprehensible if believed, they are not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency' and be regarded as 'atrocious' or 'utterly intolerable in a civilized community.' " *Id.* at ¶ 31. This court further noted that "[a] lawfully conducted investigation where wrongdoing is suspected, even if vigorously or oppressively undertaken, will not be characterized as extreme or outrageous." *Id.*

{¶ 19} In *Wheelersburg Local School Dist.*, the appellant, a school teacher, was terminated due to allegations of misappropriated funds associated with a school latchkey program. The appellant brought an action against the board of education, superintendent, and treasurer of the school district alleging in part appellees had interfered with contractual relations and caused her severe emotional distress. In asserting a claim for

intentional infliction of emotional distress, the appellant alleged: (1) the appellees failed to act in a professional manner when terminating her; (2) the conduct of the appellees was " 'designed to embarrass, humiliate and degrade [her] and/or to make [her] a 'scapegoat' for their own misfeasance and/or malfeasance'; (3) appellees 'badgered [her] for over four hours'; (4) appellees denied her request for an attorney and 'sarcastically' informed her that she 'did not need a lawyer if [she] was innocent'; (5) appellees denied appellant's request to permit her husband to be present during the four-hour questioning; and (6) appellees falsely accused her of theft." *Id.* at ¶ 49.

{¶ 20} In addressing the appellant's claim, the reviewing court held that, even if appellees' "conduct was inconsiderate, unkind, unjustified or unprofessional, their conduct was not so extreme and outrageous as to be utterly intolerable in a civilized society." *Id.* The court concluded: "We cannot state, as a matter of law that [appellees'] conduct when investigating the discrepancy in funds would make one exclaim, 'Outrageous.' Indeed, appellees' actions show, at most, that they subjected appellant to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' which are not sufficient to establish a claim for intentional infliction of emotional distress." *Id.*

{¶ 21} In the *Wheelersburg Local School Dist.* decision, the court discussed this court's decision in *Branan,* as well as two other decisions, *Shepard v. Griffin Servs., Inc.,* 2d Dist. No. 19032, 2002-Ohio-2283, and *Smith v. Lebanon City Schools,* 12th Dist. No. CA99-02-024 (Nov. 8, 1999), in which those courts evaluated claims for intentional infliction of emotional distress resulting from conduct arising from an employment relationship. In reviewing those latter two decisions, the court in *Wheelersburg Local School Dist.,* at ¶ 46-47, observed the following:

> In *Shepard v. Griffin Services, Inc.,* * * * the court determined that the following conduct was not extreme and outrageous: (1) purposefully discriminating against the employee based on her sex by treating her less favorably than other similarly situated male employees and denying her the opportunity to upgrade her position and increase her pay level; (2) maliciously and recklessly defaming the employee's reputation and character by accusing her of fraud, falsification of records and deception, without properly ascertaining the truth of the accusations; (3) publishing private and confidential information about the employee; (4) retaliating

against the employee for making complaints of discrimination; (5) terminating the employee's employment based upon false accusations and an incomplete investigation of events; and (6) breaching the contract with the employee. The court did not believe that any of the foregoing conduct would "caus[e] an average member of society to exclaim, 'Outrageous!' "

In *Smith v. Lebanon City Schools*, * * * the court concluded that the following conduct failed to rise to the level of extreme and outrageous conduct: (1) the employer screamed and yelled at the employee; (2) the employer falsely accused the employee of causing problems in the treasurer's office and of stealing money; (3) the employer "repeatedly" berated the employee in front of other people; (4) the employer called the employee "moronic and uneducated"; and (5) the employer berated the employee for being a woman.

{¶ 22} In the instant case, taking as true all the allegations in the complaint, including facts pertaining to the investigation and eventual termination of appellant's employment, the conduct alleged is simply not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mendlovic* at ¶ 47.  Based on this court's de novo review, we agree with the Court of Claims that the conduct alleged in the complaint does not, as a matter of law, rise to the level of extreme and outrageous necessary for a prima facie case of intentional infliction of emotional distress. Accordingly, the Court of Claims did not err in granting appellee's motion to dismiss appellant's claim for intentional infliction of emotional distress.

{¶ 23} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

TYACK, P.J., and LUPER SCHUSTER, J., concur.

_____