[Cite as *Friedman v. Bexley Pub. Library*, 2025-Ohio-1799.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Robert Friedman, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 24AP-762 |
| v. | : | (C.P.C. No. 24CV-7363) |
| Bexley Public Library, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on May 20, 2025

**On brief:** *Robert Friedman*, pro se. **Argued:** *Robert Friedman*.

**On brief:** *Samuel H. Shamansky Co., L.P.A., Samuel H. Shamansky*, and *Donald L. Regensburger*, for appellee. **Argued:** *Donald L. Regensburger*.

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, Robert Friedman, appeals, pro se, from the December 16, 2024 judgment of the Franklin County Court of Common Pleas dismissing his complaint against defendant-appellee, Bexley Public Library ("library"). For the following reasons, we affirm in part and reverse in part the judgment of the trial court.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 2} On September 25, 2024, Mr. Friedman initiated a civil action against the library in the court below seeking damages in the amount of $500,000. In his complaint, Mr. Friedman alleged that he had Tourette syndrome[1] and claimed the library banned him

---

[1] "Tourette syndrome (TS) is a neurological disorder that may cause sudden unwanted and uncontrolled rapid and repeated movements or vocal sounds called tics. TS is one of a group of disorders of the developing

from its premises for three months, beginning on September 23, 2024, because of his disability. Mr. Friedman alleged the library's actions constituted a violation of the Americans with Disabilities Act ("ADA") and "the Ohio statute dealing with disability discrimination." (Sept. 25, 2024 Compl. at ¶ 5.) He also claimed he suffered "humiliation, sleepless nights[,] and traumatic flashbacks of being banned," and stated he was "suing for intentional infliction of emotional distress." (Compl. at ¶ 6.)

{¶ 3} On October 15, 2024, the library filed a motion requesting the trial court dismiss Mr. Friedman's complaint under Civ.R. 12(B)(6) and (7) and impose sanctions[2] against Mr. Friedman for frivolous conduct. The library's primary contention was that all of Mr. Friedman's claims were deficient on their face and, thus, should be dismissed for failure to state a claim for which relief can be granted. Regarding the intentional infliction of emotional distress claim, the library also noted that Mr. Friedman had filed complaints in three separate cases in the last six months alleging humiliation, sleepless nights, and flashbacks against Panera Bread (ban on April 24, 2024), the Franklin County Law Library (permanent ban on August 12, 2024), and Target (permanent ban on September 14, 2024).[3]

---

[1] nervous system called tic disorders." National Institute of Neurological Disorders and Stroke: National Institute of Health, *Tourette Syndrome*, https://www.ninds.nih.gov/health-information/disorders/tourette-syndrome (accessed May 16, 2025) [https://perma.cc/4GNV-55YM].

[2] The library's counsel informed the trial court that, if sanctions were imposed against Mr. Friedman, he would be willing to waive his fee in this matter upon a showing that Mr. Friedman "has made a donation of not less than $500.00 to the Tourette Association of America, the Columbus Coalition for the Homeless, the National Alliance on Mental Illness, or some other recognized charity that provides assistance to those with legitimate mental health or housing needs." (Oct. 15, 2025 Mot. at 13.)

[3] In the case against Panera Bread, Franklin County Common Pleas case No. 24CV-3417, Mr. Friedman claimed he was banned from the Panera Bread on East Broad Street on April 24, 2024, and alleged that the Panera Bread manager's "extreme and outrageous" behavior caused him to suffer deep humiliation, sleepless nights, and exacerbated his ulcerative colitis, entitling him to two million dollars. On April 4, 2025, the trial court entered an order granting summary judgment in favor of Panera Bread on Mr. Friedman's intentional infliction of emotional distress claim.

In the case against the Franklin County Law Library, Franklin County Common Pleas case No. 24CV-6382, Mr. Friedman alleged that his permanent ban from the law library on August 12, 2024 caused him "flashbacks of being banned," humiliation, and difficulty sleeping, entitling him to $500,000 in damages. Finding the Franklin County Law Library does not possess full capacity and rights to sue or be sued (i.e., *sui juris*), the trial court dismissed Mr. Friedman's complaint in that case on November 19, 2024. *See, e.g.*, *Estate of Fleenor v. Ottawa County*, 2022-Ohio-3581, ¶ 3, fn.1 (defining "sui juris").

In the case against Target, Franklin County Court of Common Pleas case No. 24CV-7131, Mr. Friedman alleged that the permanent ban he received from Target caused him to feel "very humiliated," scared by police officers and vehicles, and difficulty sleeping, entitling him to two million dollars. That case was settled by the parties and dismissed with prejudice in March 2025.

In all three of those cases, Mr. Friedman contended that the bans imposed against him by those entities caused the same emotional distress he claimed was proximately caused by the library in this case. (*See* Oct. 15, 2024 Mot. at 8-10.) Given the overlapping nature of the harm Mr. Friedman claimed was caused by Panera Bread, Target, the Franklin County Law Library, and Bexley Public Library, the library argued that these other parties were indispensable parties under Civ.R. 19 and 19.1. (Oct. 15, 2024 Mot. at 8-10.) However, because the Franklin County Law Library cannot be sued in its own right, the library posited that dismissal under Civ.R. 12(B)(7) was likewise warranted. (*See* Oct. 15, 2024 Mot. at 8-10.)

{¶ 4} Mr. Friedman did not file any written response to the library's motion.

{¶ 5} On December 16, 2024, without holding a hearing, the trial court issued an entry granting the library's motion to dismiss, finding Mr. Friedman engaged in frivolous conduct, and ordering Mr. Friedman to pay the library's reasonable attorney fees pursuant to R.C. 2323.51. (Dec. 16, 2024 Jgmt. Entry at 3.)

{¶ 6} Mr. Friedman now appeals from that judgment, and asserts the following six assignments of error for our review:

> [I.] THAT I DID NOT ALLEGE ANY SPECIFIC PERSON WHO OWNS LEASES OR OPERATES A PLACE OF PUBLIC ACCOMODATION HAS DISCRIMINATED AGAINST ME.
>
> [II.] THE COURT ERRED WHEN THEY WROTE THAT DAMAGES ARE NOT AVAILABLE UNDER THE ADA ABSENT AN ORDER FROM THE ATTORNEY GENERAL[.]
>
> [III.] THE COURT ERRED WHEN THEY WROTE THAT LIBRARIES DO NOT FALL WITHIN A PLACE OF PUBLIC ACCOMODATION[.]
>
> [IV.] THE COURT ERRED WHEN THEY WROTE THAT THE ACTIONS OF BEXLEY [PUBLIC] LIBRARY WERE NOT EXTREME AND OUTRAGEOUS WHICH IS THE SECOND ELEMENT OF I.I.E.D[.]
>
> [V.] THE COURT ALSO ERRED WHEN THEY WROTE THAT THEY CLAIM THAT I DID NOT JOIN THE OTHER DEFENDANTS IN THE OTHER CASES THAT I'M SUING AND BECAUSE A LIBRARY IS NOT AN ENTITY THAT CAN

BE SUED THEREFORE ALL OF MY CLAIM SHOULD BE DISMISSED[.]

[VI.] THE COURT ALSO ERRED THAT MY CASE IS FRIVILOUS AND MERITLESS.

(Sic passim.)

## II. ANALYSIS

{¶ 7} The trial court granted the library's motion to dismiss Mr. Friedman's claims of unlawful discrimination under the ADA, discrimination under Ohio law, and intentional infliction of emotional distress. After dismissing Mr. Friedman's complaint, the trial court found the library's motion for sanctions under R.C. 2323.51 well-taken and ordered Mr. Friedman to pay the library's reasonable attorney fees.

### A. The trial court did not err in dismissing all of Mr. Friedman's claims

{¶ 8} In his first, second, third, fourth, and fifth assignments of error, Mr. Friedman takes issue with the trial court's various findings in support of its decision to dismiss his complaint. As explained below, we find no error in the trial court's decision to dismiss all of Mr. Friedman's claims under Civ.R. 12(B)(6).

### 1. Civ.R. 12(B)(6) Standard

{¶ 9} A motion to dismiss for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6) is a procedural test of a civil complaint's sufficiency. *Cool v. Frenchko*, 2022-Ohio-3747, ¶ 13 (10th Dist.), quoting *Morrow v. Reminger & Reminger Co. LPA*, 2009-Ohio-2665, ¶ 7 (10th Dist.). Dismissal of a complaint pursuant to Civ.R. 12(B)(6) is appropriate "only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recovery." *Bullard v. McDonald's*, 2021-Ohio-1505, ¶ 11 (10th Dist.). In determining whether dismissal is appropriate, the trial court "must presume all factual allegations contained in the complaint to be true and must make all reasonable inferences in favor of the plaintiff." *Id.* "The court need not, however, accept as true any unsupported and conclusory legal propositions advanced in the complaint." *Id.*

{¶ 10} We review a trial court's dismissal pursuant to Civ.R. 12(B)(6) de novo. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 2016-Ohio-478, ¶ 12, citing *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5. When reviewing the sufficiency of a complaint under Civ.R. 12(B)(6), we are mindful that Civ.R. 8(A) provides for notice pleading, which

requires only a "short and plain statement of the claim showing that the party is entitled to relief, and . . . a demand for judgment for the relief to which the party claims to be entitled." Accordingly, "[a] judgment granting a Civ.R. 12(B)(6) motion to dismiss may be affirmed only when there is no set of facts under which the nonmoving party could recover." *Dunlop v. Ohio Dept. of Job & Family Servs.*, 2017-Ohio-5531, ¶ 10 (10th Dist.), citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus.

### 2. Disability Discrimination under the ADA and Ohio Law

{¶ 11} Mr. Friedman's complaint referred generally to the ADA, suggesting he sought to assert a claim under that law and "the Ohio statute dealing with disability discrimination." (Compl. at ¶ 5.)

{¶ 12} "Congress enacted the ADA 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Wolfe v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-6825, ¶ 12 (10th Dist.), quoting 42 U.S.C. 12101(b)(1). "The ADA forbids discrimination against persons with disabilities in three different areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are covered by Title II; and public accommodations, which are covered by Title III." *Id.*, citing *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).

{¶ 13} Mr. Friedman alleged in his complaint that the library banned him for three months because of his Tourette syndrome. Title I of the ADA prohibits discrimination in employment and, thus, does not apply to his claim. *Friedman v. Ebner Properties*, 2023-Ohio-4398, ¶ 26 (10th Dist.). Title II of the ADA provides that "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132. And Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

{¶ 14} Regarding Mr. Friedman's disability discrimination claim under the ADA, the trial court construed his complaint as alleging a Title III violation and determined that he "has not alleged that any specific person who 'owns, leases, or operates a place of public accommodation' has discriminated against [him], an essential element for claims made under the ADA." (Dec. 16, 2024 Jgmt. Entry at 2, citing 42 U.S.C. 12182(a).) In his first assignment of error, Mr. Friedman contends this finding was error.

{¶ 15} The trial court further observed that "monetary damages are not available under [Title III of] the ADA absent a request from the Attorney General." (Dec. 16, 2024 Jgmt. Entry at 2, citing 42 U.S.C. 12188(b)(2)(B).) In his second assignment of error, Mr. Friedman contends this statement was erroneous.

{¶ 16} The trial court also interpreted Mr. Friedman's allegation that the library violated "the Ohio statute dealing with disability discrimination" as referring to R.C. 4112.02(G). That provision prohibits "any proprietor or any employee, keeper, or manager of a place of public accommodation" from denying "to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation." R.C. 4112.02(G). The trial court found that the library was not a " 'place of public accommodation' as that term is used in R.C. 4112.02(G)" because, in Ohio, that term "does not refer to locations offering gratuitous services." (Dec. 16, 2024 Jgmt. Entry at 2.) In his third assignment of error, Mr. Friedman broadly alleges that the trial court erred in finding "that libraries do not fall within a place of public accommodation." (Appellant's Brief at 3.)

{¶ 17} Initially, we note that Title II—not Title III—typically applies to libraries. *See, e.g.*, *Doe v. Knox Cty. Bd. of Edn.*, 56 F.4th 1076, 1080 (6th Cir. 2023) ("Title II of the ADA seeks to ensure that people with disabilities may use public facilities like libraries, courthouses, or schools."). *See also* Association of Research Libraries, *ADA Title II Regulations: Implications for Libraries*, https://www.arl.org/resources/ada-title-ii-regulations-implications-for-libraries (accessed May 16, 2025) [https://perma.cc/3VM6-EBK4]; (summarizing April 24, 2024 revisions to ADA Title II regulations and their implications for libraries); Library Accessibility Alliance, *ADA Title II and Academic Libraries*, https://libraryaccessibility.org/ada-title-ii (accessed May 16, 2025)

[https://perma.cc/DYJ8-NK95] (the same). We also note that, unlike Title III of the ADA, Title II "authorizes suits by private citizens for money damages against public entities that violate [Section] 12132." *United States v. Georgia*, 546 U.S. 151, 154, 159 (2006).

{¶ 18} Significantly, however, Mr. Friedman did not allege in his complaint that the library was a "public entity" subject to Title II of the ADA. Nor does he contend on appeal that the trial court erroneously construed his complaint as alleging disability discrimination under Title III of the ADA or R.C. 4112.02(G).

{¶ 19} Instead, Mr. Friedman repeatedly asserts in his merit brief that he "was not suing under the ADA [or state law] as a cause of action" for disability discrimination. (*See* Appellant's Brief at 4-5. *See also* Appellant's Brief at 6, 12.) At oral argument, he reiterated the same. As explained by Mr. Friedman, the alleged violations of federal and state disability discrimination laws are referenced in his complaint as proof of "extreme and outrageous" conduct—an element of his intentional infliction of emotional distress claim. (*See* Appellant's Brief at 4-5.)

{¶ 20} In light of Mr. Friedman's stated position that he is not alleging federal or state disability discrimination claims, the issues raised in his first, second, and third assignments of error do not concern a matter in controversy between the parties on appeal. In his first and third assignments of error, Mr. Friedman challenges the trial court's finding that he failed to identify in his complaint any person subject to Title III of the ADA ("any specific person who owns, leases [or leases to], or operates [a] place of public accommodation") and determination that a library is not a "place of public accommodation" under the ADA or R.C. 4112.02(G). (Appellant's Brief at 2.) In his second assignment of error, Mr. Friedman takes issue with the trial court's determination that monetary damages are not available under Title III of the ADA. These findings have no bearing on whether the ban was based on Mr. Friedman's disability and, thus, are not relevant to showing the ban was "extreme and outrageous" for purposes of an intentional infliction of emotional distress claim.

{¶ 21} "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Miner v. Witt*, 82 Ohio St. 237, 238

(1910). *See also M.R. v. Niesen*, 2022-Ohio-1130, ¶ 13, quoting *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970) (observing that courts "decide only 'actual controversies between parties legitimately affected by specific facts' "). Further, we have a "responsibility to refrain from giving advisory opinions." *Cyran v. Cyran*, 2018-Ohio-24, ¶ 12, citing *Smith v. Leis*, 2006-Ohio-6113, ¶ 16. Since Mr. Friedman asserts he is not alleging disability discrimination claims under federal or Ohio law, we cannot issue a "judgment [which] can be carried into effect" as to his first, second, or third assignments of error. A reviewing court is not required to "render an advisory opinion on a moot question or rule on a question of law that cannot affect matters at issue in a case." *In re A.P.*, 2022-Ohio-4295, ¶ 29 (10th Dist.), quoting *In re C.C.*, 2005-Ohio-5163, ¶ 23 (10th Dist.). In such instance, we are permitted to instead overrule assigned errors as moot. *See, e.g.*, *A.P.* at ¶ 29, citing *Bambeck v. Catholic Dioceses of Cleveland*, 2006-Ohio-4883, ¶ 20 (8th Dist.).

{¶ 22} Because Mr. Friedman's first, second, and third assignments of error take issue with findings that ultimately have no bearing on the trial court's decision to dismiss his claim for intentional infliction of emotional distress, we overrule those three assignments of error as moot.

### 3. Intentional Infliction of Emotional Distress

{¶ 23} To survive a motion to dismiss when alleging a claim of intentional infliction of emotional distress, a complaint must include allegations that (1) the defendant intended to cause or knew or should have known that its actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all bounds of decency and was such as to be considered utterly intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature that no reasonable person could be expected to endure. *Brown v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-4012, ¶ 9 (10th Dist.), citing *Perry v. Dept. of Rehab. & Corr.*, 2013-Ohio-3828, ¶ 16 (10th Dist.), citing *Aycox v. Columbus Bd. of Edn.*, 2005-Ohio-69 (10th Dist.). *See also Coffman v. Dept. of Rehab. & Corr.*, 2013-Ohio-3829, ¶ 14 (10th Dist.).

{¶ 24} In this case, Mr. Friedman alleges his three-month ban from the library was "extreme and outrageous" because it violated federal and state disability discrimination

laws. (*See* Compl. at ¶ 5.) Mr. Friedman claims to suffer "humiliation, sleepless nights[,] and traumatic flashbacks of being banned for 3 months." (Compl. at ¶ 6.)

{¶ 25} Whether conduct rises to the level of "extreme and outrageous" conduct constitutes a question of law. *See, e.g., Meminger v. Ohio State Univ.*, 2017-Ohio-9290, ¶ 7, 14 (10th Dist.); *Morrow*, 2009-Ohio-2665, at ¶ 48. " '[I]t is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.' " *Meminger* at ¶ 15, quoting *Mendlovic v. Life Line Screening of Am., Ltd.*, 2007-Ohio-4674, ¶ 47 (8th Dist.). "Rather, '[l]iability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " *Id.*, citing *Mendlovic* at ¶ 47, citing *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 374-75 (1983). Generally, "extreme and outrageous" conduct that warrants recovery for intentional infliction of emotional distress " 'must be conduct that would lead an average member of the community to exclaim, "Outrageous!" ' " *Meminger* at ¶ 15, quoting *Perkins v. Lavin*, 98 Ohio App.3d 378, 383 (9th Dist. 1994), citing *Yeager* at 374-75, citing Restatement of the Law 2d, Torts, Section 46(1) (1965).

{¶ 26} In this case, taking as true all the allegations in the complaint, we do not find the conduct alleged—a three-month ban from the library—" 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " *Meminger* at ¶ 22, quoting *Mendlovic* at ¶ 47. Mr. Friedman asserts this ban was borne out by the library's unlawful disability discrimination against him. But he did not include in his complaint any factual allegations surrounding the circumstances of the ban or attribute any particular conduct to any library representative that could be seen as unlawful discrimination or otherwise outrageous or extreme as a matter law.

{¶ 27} It is well-established that the obligation to accept factual allegations in a complaint as true when ruling on a Civ.R. 12(B)(6) motion to dismiss does not extend to unsupported legal conclusions. *See, e.g., Regulic v. Columbus*, 2022-Ohio-1034, ¶ 22-23 (10th Dist.); *Kanu v. Univ. of Cincinnati*, 2018-Ohio-4969, ¶ 10 (10th Dist.) (affirming a

Rule 12(B)(6) dismissal for failure to state a claim by observing that "the court need not accept as true any unsupported and conclusory legal propositions advanced in the complaint"). "[O]nly claims supported by factual allegations can avoid dismissal" under Civ.R. 12(B)(6). *Stainbrook v. Ohio Secy. of State*, 2017-Ohio-1526, ¶ 11 (10th Dist.), citing *Haas v. Stryker*, 2013-Ohio-2476, ¶ 10 (6th Dist.). We are not bound to accept Mr. Friedman's legal conclusion, couched as a factual allegation, that the library engaged in disability discrimination when it banned him from its premises for three months.

{¶ 28} At issue, then, is whether a three-month ban from a public library, alone, constitutes the "extreme and outrageous" conduct required to establish a claim of intentional infliction of emotional distress. On review, we find that such conduct, in the absence of any factual allegations regarding the circumstances surrounding Mr. Friedman's ban, is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager* at 375. Thus, the conduct alleged in Mr. Friedman's complaint cannot, as a matter of law, rise to the level of extreme and outrageous necessary for a prima facie case of intentional infliction of emotional distress.

{¶ 29} Based on this court's de novo review, we find the trial court did not err in granting the library's motion to dismiss Mr. Friedman's claim for intentional infliction of emotional distress pursuant to Civ.R. 12(B)(6). For these reasons, we overrule Mr. Friedman's fourth assignment of error.

{¶ 30} In his fifth assignment of error, Mr. Friedman challenges the trial court's finding that he failed to join necessary parties and determination that the Franklin County Law Library is not an entity that can be sued. These findings pertain to the trial court's determination that dismissal of his intentional infliction of emotional distress claim was also warranted under Civ.R. 12(B)(7). (*See* Dec. 16, 2024 Jgmt. Entry at 3.) Given our resolution of Mr. Friedman's fourth assignment of error finding dismissal of that claim was appropriate under Civ.R. 12(B)(6), however, any issues regarding the propriety of the trial court's findings under Civ.R. 12(B)(7) have now been rendered moot. *See* App.R. 12(A)(1)(c); *State v. Gideon*, 2020-Ohio-6961, ¶ 26 ("[A]n assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision

rendered by the appellate court."). As such, we overrule Mr. Friedman's fifth assignment of error as moot.

### B. The trial court erred in granting the library's motion for sanctions and attorney fees pursuant to R.C. 2323.51

{¶ 31} In his sixth assignment of error, Mr. Friedman contends the trial court erred in finding that his case "is frivolous and meritless." (Appellant's Brief at 4. *See also* Appellant's Brief at 11.) For the following reasons, we find the trial court erred in imposing sanctions against him.

{¶ 32} Under R.C. 2323.51, a court "may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct." R.C. 2323.51(B)(1). "Conduct" encompasses "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, . . . or the taking of any other action in connection with a civil action." R.C. 2323.51(A)(1)(a). "Frivolous conduct" means the conduct of a party to a civil action satisfies any of the following:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a).

{¶ 33} R.C. 2323.51(B)(2) provides that an award under R.C. 2323.51(B)(1) may be made *only* after the court does *all* of the following:

> (a) Sets a date for a hearing to be conducted in accordance with division (B)(2)(c) of this section, to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award;

> (b) Gives notice of the date of the hearing described in division (B)(2)(a) of this section to each party or counsel of record who allegedly engaged in frivolous conduct and to each party who allegedly was adversely affected by frivolous conduct;

> (c) Conducts the hearing described in division (B)(2)(a) of this section in accordance with this division, allows the parties and counsel of record involved to present any relevant evidence at the hearing, including evidence of the type described in division (B)(5) of this section, determines that the conduct involved was frivolous and that a party was adversely affected by it, and then determines the amount of the award to be made.

{¶ 34} R.C. 2323.51 does not require a trial court to conduct a hearing before *denying* a motion for attorney fees. *See Brisco v. U.S. Restoration & Remodeling, Inc.*, 2015-Ohio-3567, ¶ 37 (10th Dist.). Rather, a trial court is only required to schedule a hearing on motions demonstrating arguable merit. *See id.*

{¶ 35} No single standard of review applies in R.C. 2323.51 cases. *Judd v. Meszaros*, 2011-Ohio-4983, ¶ 18 (10th Dist.), citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 51 (10th Dist. 1996). Indeed, the controlling standard of review hinges on whether the trial court's determination resulted from factual findings or a legal analysis. *Bell v. Nichols*, 2013-Ohio-2559, ¶ 18 (10th Dist.). R.C. 2323.51(A)(2)(a)(i), (iii), and (iv) require the trial court to make factual determinations. Our review of these factual determinations is subject to deference and will not be disturbed where the record contains competent, credible evidence to support the trial court's findings. *Brisco* at ¶ 35, citing *Judd* at ¶ 18. By contrast, a determination under R.C. 2323.51(A)(2)(a)(ii) that conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law requires a legal analysis and is, therefore, subject to de novo review.

*Brisco* at ¶ 35, citing *Judd* at ¶ 19, and *Stuller v. Price*, 2003-Ohio-6826, ¶ 14 (10th Dist.). Finally, where a trial court finds frivolous conduct, the decision whether to assess a penalty lies within the sound discretion of the trial court. *Judd* at ¶ 19.

**{¶ 36}** Here, the trial court issued a written judgment finding that Mr. Friedman engaged in frivolous conduct "through his frivolous filing" and ordered him to pay the library's "reasonable attorney's fees." (Dec. 16, 2024 Jgmt. Entry at 3.) On appeal, Mr. Friedman contends the trial court erred in finding he engaged in frivolous conduct. Mr. Friedman did not specifically allege that the trial court erred (1) in not holding a hearing on the library's motion for sanctions, as required by R.C. 2323.51(B)(2), and (2) in not making findings of fact. Nevertheless, because his sixth assignment of error essentially alleges the trial court's frivolous conduct finding was erroneous, we believe it is prudent to address the lack of hearing and lack of findings.

**{¶ 37}** The record reflects the trial court did not hold a hearing on the library's motion for sanctions before making this award, as required by R.C. 2323.51(B)(2). The absence of a hearing is significant because the trial court did not receive evidence establishing the actual amount of the library's attorney fees and did not make any findings on the reasonableness thereof. *See* R.C. 2323.51(B)(5). Instead, the trial court left it to the parties to negotiate a "reasonable award," noting that the library's counsel expressed a willingness to waive his fees if Mr. Friedman donated at least $500 to one of the suggested charities. (Dec. 16, 2024 Jgmt. Entry at 3.) The trial court's failure to determine the amount of attorney fees clearly contravenes R.C. 2323.51(B)(2)(c), which requires the trial court to both **conduct** a hearing on a motion for sanctions and, where appropriate, "**determine[] the amount** of the award to be made." (Emphasis added.)

**{¶ 38}** Based on the foregoing, we find the trial court erred in granting the library's motion for sanctions without holding a hearing. We do not address the remainder of Mr. Friedman's arguments and make no findings as to whether he engaged in frivolous conduct or if sanctions are ultimately appropriate in this matter.

**{¶ 39}** Accordingly, we sustain, in part, Mr. Friedman's sixth assignment of error to the extent that the trial court failed to comply with the requirements set forth in R.C. 2323.51.

**III. CONCLUSION**

{¶ 40}  For the foregoing reasons, we overrule Mr. Friedman's fourth assignment of error, overrule Mr. Friedman's first, second, third, and fifth assignments of error as moot, and sustain Mr. Friedman's sixth assignment of error, in part, to the extent outlined in this decision.  The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings consistent with this decision and the applicable law.

*Judgment affirmed in part and reversed in part*;
*cause remanded with instructions.*

BEATTY BLUNT and DINGUS, JJ., concur.