[Cite as *FIG OH18, L.L.C. v. Valentik*, 2026-Ohio-2410.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| FIG AS CUSTODIAN FOR FIG OH18, LLC AND SECURED PARTY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 115575 |
| v. | : | |
| | : | |
| WILLIAM G. VALENTIK, ET AL., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |
| [Appeal by Jeffrey Slavin Defendant-Appellant] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 25, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-954751

---

### *Appearances:*

Edward F. Herman, *pro se.*

Jeffrey F. Slavin, *pro se.*

LISA B. FORBES, P.J.:

{¶ 1} Appellant Jeffrey F. Slavin ("Slavin") appeals from the judgment denying his motion for attorney fees and sanctions against appellee Edward F. Herman ("Herman"). In his motion for sanctions, Slavin asserted that arguments

made by Herman in defense of Herman's client against Slavin's cross-claim in an underlying foreclosure matter were frivolous and violated R.C. 2323.51 and Civ.R. 11. The trial court denied the motion without holding a hearing. For the reasons that follow, we affirm the trial court's decision.

## I. FACTS AND PROCEDURAL HISTORY

### A. Slavin's Interest in the Property and Underlying Trial Court Proceedings

{¶ 2} On October 22, 2021, Fig as Custodian for FIG OH18, LLC and Secured Party ("FIG") filed a foreclosure complaint against William G. Valentik ("Valentik"), and several other individuals and entities.[1] FIG alleged that it was the owner of a tax certificate encumbering the property at 2045 Reveley Avenue, in Lakewood, Ohio (the "Property"), and demanded foreclosure of its tax certificates. The trial court referred the matter to a magistrate.

{¶ 3} FIG filed an amended complaint, naming Slavin as an additional defendant, alleging that Slavin held two mortgages on the Property. Slavin answered and filed a cross-claim against Valentik. Slavin detailed his interest in the Property based on two mortgages, which arose from two promissory notes executed by Valentik in 2014 and 2018. Slavin alleged that these mortgages constituted a lien on the Property and demanded that proceeds of a foreclosure sale of the Property be applied in payment of the lien, according to order of priority.

---

[1] On October 26, 2022, FIG filed a motion to substitute Aviation 22, L.L.C. as substitute plaintiff. The magistrate granted the motion on November 23, 2022.

**{¶ 4}** Herman, as Valentik's attorney, filed Valentik's answer to FIG's amended complaint and to Slavin's cross-claim. The answer put forward affirmative defenses, including assertions that the cross-claims are "against the public policy of the State of Ohio, and are therefore unenforceable."

**{¶ 5}** FIG filed a motion for summary judgment against Valentik. On October 13, 2023, the magistrate granted FIG's motion for summary judgment, granting foreclosure on the Property and finding that Slavin claimed "some right, title, interest or lien upon the premises described," but did not make any further findings relating to Slavin's claims. The trial court adopted the magistrate's decision.

**{¶ 6}** On June 18, 2023, Slavin filed a motion for summary judgment on his cross-claim against Valentik. Valentik's brief in opposition, which was signed by Herman, noted that Slavin was formerly Valentik's attorney and that Valentik executed two promissory notes and two mortgages in Slavin's favor. Valentik further argued that through these promissory notes and mortgages, Slavin, "(1) imposed compound interest on amounts allegedly due under [Slavin's] fee bill and (2) obtained a security interest in Valentik's property." As Valentik's attorney, Herman further argued that

> Rule 1.8 of the Ohio Rules of Professional Responsibility prohibit[s] a lawyer from entering into a contract with a client, or acquiring an adverse pecuniary interest with his client, unless: the terms are fair and reasonable; the client is advised in writing of the desirability of seeking independent counsel, and; the client signs a written disclosure of terms of the proposed transaction.

Herman argued that contracts made in violation of Prof.Cond.R. 1.8 may be void and may violate public policy. Herman further contended that "an unfair contract between an attorney and his client may be deemed unconscionable, especially if the underlying terms are unfair and the legal safeguards (i.e., informed consent; review by independent counsel) are absent."

{¶ 7} In response to those arguments, in his reply brief in support of his motion for summary judgment, Slavin argued that Prof.Cond.R. 1.8 did not apply because the promissory notes and mortgages at issue were not a "transaction" under Prof.Cond.R. 1.8 and that Valentik's brief confused the relationship between Slavin and Valentik "as some kind of transaction or contract," when the notes and mortgages merely secured Slavin's fee for legal services. Slavin also argued that the "notes and mortgages are not legal instruments contemplated under Rule 1.8."

{¶ 8} The trial court denied Slavin's motion for summary judgment, and a bench trial was held on April 29, 2024, on Slavin's cross-claim against Valentik. The only witness to testify was Slavin. At trial, Slavin waived compounding interest on the notes, seeking per annum interest instead. Following trial, Slavin and Valentik submitted proposed findings of fact and conclusions of law in which Valentik, through Herman as his counsel, reiterated the arguments he had made in opposition to Slavin's motion for summary judgment.

{¶ 9} The magistrate issued a decision finding in favor of Slavin. In its findings of fact and conclusions of law, the magistrate determined that Slavin

represented Valentik in a divorce proceeding and that Valentik did not pay his legal bills in full. The magistrate further determined:

> To secure payment of his legal bills and to lend Valentik money, in November 2014 Slavin drafted and presented a promissory note ("2014 Note") and a related mortgage ("2014 Mortgage") on Valentik's residential property at 2045 Reveley Avenue in Lakewood.

{¶ 10} The magistrate further found that Valentik executed a second promissory note in 2018. This note related to a second loan from Slavin to Valentik. The 2018 promissory note was again secured with a mortgage on Valentik's home. Both promissory notes included annual compound interest on the sum total, the former for 4 percent interest, and the later for 6 percent interest.

{¶ 11} The magistrate found that Slavin and Valentik's attorney-client relationship "had concluded before the 2014 Note and Mortgage were executed and long before the 2018 Note and Mortgage were executed." The magistrate's decision included discussion of Op. No. 2004-8 of the Board of Commissioners on Grievances and Discipline, for guidance relating to an attorney's acquiring a mortgage on a client's home to secure a legal fee. Op. 2004-8 states that

> [a]ttorneys are not encouraged to secure legal fees with a mortgage on a client's property. Acquiring a mortgage on a client's home to secure legal fees does not foster the attorney-client relationship and may evolve into legal disputes with the client that may affect a client's ability to maintain a roof overhead.

Board of Commissioners on Grievances and Discipline Op. No. 2004-8 ("Op. No. 2004-08").

**{¶ 12}** The magistrate found that Valentik had not shown that the notes and mortgages were unenforceable due to unconscionability. The magistrate found that neither procedural nor substantive unconscionability were demonstrated here.

**{¶ 13}** On August 5, 2025, the trial court adopted the magistrate's July 14, 2025 decision, with modifications, attaching the magistrate's decision to its journal entry. Unlike the magistrate, the trial court found that Slavin was entitled to receive simple interest on the promissory notes beginning on their date of execution, as opposed to the date the cross-claim was filed.

### B. Slavin's Motion for Sanctions

**{¶ 14}** On August 6, 2025, Slavin filed a motion seeking sanctions and attorney fees under R.C. 2323.51 and Civ.R. 11 against Herman. The motion reiterated sections from Slavin's reply brief in support of his motion for summary judgment.

**{¶ 15}** In the motion, Slavin attempted to address arguments and distinguish cases raised by Herman in his brief in opposition to Slavin's motion for summary judgment, arguing that the promissory notes were neither procedurally, nor substantively unconscionable, and that Prof.Cond.R. 1.8 does not apply because the promissory notes and mortgages are not a "transaction" under Prof.Cond.R. 1.8. Slavin argued that Herman's filings on behalf of Valentik were signed with the intent of defeating the purpose of Civ.R. 11, "so they were a sham and [d]ue to willful violations of Rule 11 and R.C. Section 2323.51." Slavin argued that he should be awarded legal fees he incurred due to Herman's violations.

{¶ 16} On August 19, 2025, Heman opposed Slavin's motion for sanctions. The trial court denied Slavin's motion for sanctions without a hearing, finding that he "did not demonstrate that the defenses were made in bad faith or were otherwise frivolous . . . ."

{¶ 17} On appeal, Slavin raises the following single assignment of error: "The trial court erred in denying the appellant's motion for sanctions pursuant to R.C. 2323.51 and Civil Rule 11."

## II.   LAW AND ANALYSIS

### A. Record on Appeal

{¶ 18} Before turning to the standard of review and our analysis of the trial court's judgment, we note that Herman argued that this case does not include a transcript of the hearing on the cross-claim at issue or an App.R. 9(C) statement of the evidence or proceedings.  Herman claimed that Slavin's assertion regarding sanctionable behavior cannot be fully evaluated without the transcript of the trial on his cross-claims, "because Slavin calls into question Valentik's proposed findings of fact and conclusions of law, which necessarily recount what happened at trial."

{¶ 19} Slavin asserts that his arguments for sanctions under Civ.R. 11 and R.C. 2323.51 are "purely legal," and do not require a transcript.  He states that the issue is whether Herman's legal defense against the promissory notes and mortgages is "sanctionable."

{¶ 20} It is an appellant's duty to arrange for a transmission of the record, including the transcript of proceedings.  App.R. 9(B); *In re D.B.*, 2025-Ohio-1371,

¶ 13 (8th Dist.); *V.C. v. O.C.*, 2021-Ohio-1491, ¶ 64 (8th Dist.) ("It is the appellant's duty to file the transcript or any parts of the transcript that are necessary for evaluating the trial court's decisions."). "This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *V.C.* at *id.*, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980), citing *State v. Skaggs*, 53 Ohio St.2d 162 (1987).

{¶ 21} However, if a party can demonstrate the error complained of by the docket and journal entries, it is not necessary to provide an appellate court with a transcript of proceedings, a narrative statement, or an agreed statement as provided in the appellate rules. *Conway v. Ford Motor Co.*, 48 Ohio App.2d 233, 236-237 (8th Dist. 1976).

{¶ 22} We find that the issue on appeal does not raise questions of fact that would necessitate a review of the transcript. Slavin's objections to the magistrate's decision, adopted by the trial court, do not identify an objection to the magistrate's findings of fact. For purposes of the sole assignment of error in this appeal, our review is limited to the underlying pleadings and the trial court's orders.

**B. Legal Standard Under R.C. 2323.51**

{¶ 23} R.C. 2323.51(B)(1) authorizes a court to award court costs, reasonable attorney fees, and other reasonable expenses incurred by a party adversely affected

by "frivolous conduct" "in connection with a civil action." Pursuant to the statute, "frivolous conduct" means conduct that satisfies any of the following:[2]

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a)(i)-(iv).

{¶ 24} To constitute "frivolous conduct," the conduct at issue must be egregious in nature. *See State ex rel. DiFranco v. S. Euclid*, 2015-Ohio-4915, ¶ 15. "Frivolous conduct is not proved merely by winning a legal battle or by proving that a party's factual assertions were incorrect." *Id.*, citing *Ohio Power Co. v. Ogle*, 2013-Ohio-1745, ¶ 29-30 (4th Dist.).

{¶ 25} Importantly, unlike Civ.R. 11, which requires the court to look at the subjective willfulness of the attorney or pro se litigant's violation of the rule,

---

[2] Among other things, the statute defines "conduct" as the "the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action." R.C. 2323.51(A)(1)(a).

"'R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed for frivolous conduct.'" *State ex rel. Striker v. Cline*, 2011-Ohio-5350, ¶ 21, quoting *Stafford v. Columbus Bonding Ctr.*, 2008-Ohio-3948, ¶ 8 (10th Dist.).

{¶ 26} The standard of review on appeal from the denial or grant of a motion for sanctions under R.C. 2323.51 depends on the frivolous conduct alleged and the trial court's findings. As the Tenth District Court of Appeals has explained:

> No single standard of review applies in R.C. 2323.51 cases. *Judd v. Meszaros*, 2011-Ohio-4983, ¶ 18 (10th Dist.), citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 51, 673 N.E.2d 628 (10th Dist. 1996). Indeed, the controlling standard of review hinges on whether the trial court's determination resulted from factual findings or a legal analysis. *Bell v. Nicols*, 2013-Ohio-2559, ¶ 18 (10th Dist.). R.C. 2323.51(A)(2)(a)(i), (iii), and (iv) require the trial court to make factual determinations. Our review of these factual determinations is subject to deference and will not be disturbed where the record contains competent, credible evidence to support the trial court's findings. *Brisco* ¶ 35 (10th Dist.), citing *Judd* at ¶ 18. By contrast, a determination under R.C. 2323.51(A)(2)(a)(ii) that conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law requires a legal analysis and is, therefore, subject to de novo review. *Brisco* at ¶ 35, citing *Judd* at ¶ 19, and *Stuller v. Price*, 2003-Ohio-6826, ¶ 14 (10th Dist.). Finally, where a trial court finds frivolous conduct, the decision whether to assess a penalty lies within the sound discretion of the trial court. *Judd* at ¶ 19.

*Friedman v. Bexley Pub. Library*, 2025-Ohio-1799, ¶ 35 (10th Dist.). Even where frivolous conduct is found to exist, a trial court has discretion to deny sanctions. *Internatl. Union of Operating Engineers, Local 18 v. Laborers' Internatl. Union of N. Am., Local 310,* 2017-Ohio-1055, ¶ 10 (8th Dist.).

## C. Legal Standard Under Civ.R. 11

{¶ 27} Although Civ.R. 11 and R.C. 2323.51 each provide a means by which an aggrieved party may recover attorney fees and other expenses as a result of a party's frivolous conduct, they differ in their standards of proof and application. *See id.* at ¶ 9.[3]

{¶ 28} Civ.R. 11 applies to both attorneys and pro se litigants and concerns the signing of pleadings, motions, and other documents. It provides, in relevant part:

> The signature of an attorney or *pro se* party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. . . . For a willful violation of this rule, an attorney or *pro se* party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule.

(Emphasis in original.)

{¶ 29} When evaluating a motion for sanctions under Civ.R. 11, a court must assess "'whether the attorney signing the document (1) has read the pleading,

---

[3] Although not raised by the appellee, we note that courts across the state have held that an attorney litigant who represents himself cannot obtain attorney fees as sanctions. *See Mikhael v. Gallup*, 2006-Ohio-3917, ¶ 8-17 (9th Dist.) In *Gallup*, the Ninth District held that a pro se litigant could obtain attorney fees as sanctions under R.C. 2323.51 and Civ.R. 11, but only because he was not merely acting in his own defense but was also representing his law firm and its clients, and thus reasonably incurred fees. This holding expands on the Supreme Court's decision in *State ex rel. Freeman v. Wilkinson*, 64 Ohio St.3d 516, 517 (1992), that a pro se litigant (who was an inmate at a correctional facility) was not entitled to attorney fees because "R.C. 2323.51 provides for attorney fees, not compensation for pro se litigants." *See also Lakeview Holding (OH), L.L.C v. Haddad*, 2013-Ohio-1796, ¶ 24 (8th Dist.).

(2) harbors good grounds to support it to the best of his or her knowledge, information, and belief, and (3) did not file it for purposes of delay.'" *Internatl. Union of Operating Engineers, Local 18*, 2017-Ohio-1055, at ¶ 13 (8th Dist.), quoting *Ceol v. Zion Indus., Inc.,* 81 Ohio App.3d 286, 290 (9th Dist. 1992). If any of these requirements are not satisfied, the court must then determine whether the failure was "willful" rather than merely "negligent." *See id.* The use of the term "willful" as a prerequisite for imposing sanctions under Civ.R. 11 indicates that courts are to apply a subjective bad-faith standard in their analysis. *See id.*; *see also State ex rel. Dreamer v. Mason*, 2007-Ohio-4789, ¶ 19 ("Civ.R. 11 employs a subjective bad-faith standard to invoke sanctions by requiring that any violation . . . be willful."). The Ohio Supreme Court has described "bad faith" as

> a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud . . . . It means with actual intent to mislead or deceive another.

(Cleaned up.) *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 2010-Ohio-5073, ¶ 8. "Under Civ.R. 11, a court can impose sanctions only when the attorney or pro se litigant acts willfully and in bad faith by filing a pleading that he or she believes lacks good grounds or is filed merely for the purpose of delay." *Id.*

{¶ 30} The standard of review on appeal from the grant or denial of a motion for sanctions under Civ.R. 11 is an abuse of discretion. *Id.* at ¶ 9. This means that a reviewing court may not merely substitute its judgment for that of the trial court.

*Id.* Where some competent, credible evidence exists to support the trial court's judgment, no abuse of discretion has occurred. *Id.* An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *W.A.F.P., Inc. v. Sky Fuel Inc.*, 2024-Ohio-3297, ¶ 13 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### D. Hearing on a Motion for Sanctions

{¶ 31} "Neither Civ.R. 11 nor R.C. 2323.51 require a trial court to conduct a hearing before denying a motion for sanctions when the court determines, upon consideration of the motion and in its discretion, that [the motion] lacks merit." (Cleaned up.) *Internatl. Union of Operating Engineers, Local 18* at ¶ 18. "'[W]here the court has sufficient knowledge of the circumstances for the denial of the requested relief and the hearing would be perfunctory, meaningless, or redundant,' a hearing is unnecessary." *Id.*, quoting *Pisani v. Pisani*, 101 Ohio App.3d 83, 88 (8th Dist. 1995).

### E. Discussion

{¶ 32} On appeal, Slavin argues that the trial court's denial of his motion for sanctions under Civ.R. 11 and R.C. 2323.51 was an abuse of discretion. We disagree.

{¶ 33} In his appeal, Slavin did not clearly distinguish between what, if any, argument for sanctions he was making under Civ.R. 11 and what, if any, argument for sanctions he was making under R.C. 2323.51. Rather, Slavin broadly asserts that

the defenses Herman raised in Valentik's answer, in opposition to summary judgment, and in Valentik's proposed findings of fact and conclusions of law were spurious and "had no basis in law or fact." According to Slavin, the "legal defense cited by Herman, that Valentik should keep the money given to him by Slavin, is the template and the very definition of frivolous conduct by an attorney." Specifically, Slavin argues that Herman cited to cases that were either irrelevant or supported Slavin's position. He also states that Herman's use of the Prof.Cond.R. 1.8 defense was improper because Valentik and Slavin did not have an attorney-client relationship at the time the notes and mortgages were executed, and because "defining promissory notes and mortgages as a transaction is deliberate deception."

{¶ 34} In response, Herman argues that his defense of Valentik was grounded in a legitimate legal theory, specifically that a transaction between a lawyer and a client may be deemed unenforceable if legal safeguards are not followed. Herman also argued that, without "safeguards or warnings," "an agreement for compound interest on legal bills . . . is conceivably unfair, unethical, or against public policy."

{¶ 35} Prof.Cond.R. 1.8, titled "Conflict of Interest: Current Clients: Specific Rules," states:

> (a) A lawyer shall not enter into a business transaction with a client or *knowingly* acquire an ownership, possessory, security, or other pecuniary interest adverse to the client unless all of the following apply:
>
> (1) the transaction and terms on which the lawyer acquires the interest are fair and *reasonable* to the client and are fully disclosed to the client

in writing and in a manner that can be *reasonably* understood by the client;

(2) the client is advised in *writing* of the desirability of seeking and is given the reasonable opportunity to seek the advice of independent legal counsel on the transaction;

(3) the client gives *informed* consent, in a *writing* signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

(Emphasis in original.) Prof.Cond.R. 1.8(a).

{¶ 36} Although the trial court adopted the magistrate's finding that Slavin and Valentik's attorney-client relationship had concluded "before the 2014 Note and Mortgage were executed and long before the 2018 Note and Mortgage were executed," the decision acknowledged concerns with this type of agreement occurring within an attorney-client relationship. In its decision, the magistrate cited the following passage from Op. No. 2004-08:

[a]ttorneys are not encouraged to secure legal fees with a mortgage on a client's property. Acquiring a mortgage on a client's home to secure a legal fee does not foster the attorney-client relationship and may evolve into legal disputes with the client that may affect a client's ability to maintain a roof overhead.

Op. No. 2004-08.

{¶ 37} We note that Op. 2004-8 was revisited by the Ohio Board of Professional Conduct ("Board") in Ohio Ethics Adv. Op. 2025-02 (Apr. 4, 2025).[4]

---

[4] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline was renamed the Board of Professional Conduct (the "Board"). While not addressed by the magistrate or judge, we also note that Op. 2004-08 includes a passage that states, "Is it ethical or unethical for an attorney to acquire a mortgage on a client's home

In Op. 2025-02, the Board explained that "Prof.Cond.R. 1.8(a) governs a lawyer's business transactions with clients due to the risk that the lawyer's personal and financial interest could interfere with the lawyer's professional judgment on behalf of the client." *Id.* at 2 (citing N.Y. Ethics Adv. Op 1104 (Oct. 5, 2016)). The Board confirmed that, while a lawyer is permitted to hold a security interest adverse to the client to secure the lawyer's fees or expenses, the acquisition is considered a business transaction that must comply with Rule 1.8(a).

{¶ 38} Prof.Cond.R. 1.8(a) prohibits an attorney and current client from entering into financial arrangements, like those at issue here, without significant guardrails. Although Prof.Cond.Rule 1.8(a) applies only to transactions with current clients, a review of the record reveals that the court never precisely established when Slavin and Valentik's attorney-client relationship ended, noting only that it had concluded before the 2014 promissory note and mortgage was executed.[5]

### 1. R.C. 2323.51

{¶ 39} We find no abuse of discretion in the trial court's denial of sanctions under R.C. 2323.51. Except for bolding certain parts of his appeal that cite R.C. 2323.51, Slavin did not specify which aspect or aspects of

---

to secure a legal fee? No doubt, this has been an area of ethical uncertainty for Ohio attorneys."

[5] Some courts have found that "it is not necessarily determinative that the representation may have concluded before the transaction was entered. A transaction between an attorney and his former client must be scrutinized for signs of unfairness despite the fact that the attorney-client relationship has terminated for most purposes." *Gayle v. Hemlani*, 2000 Guam 25, ¶ 28 (citing *Henniecutt v. State Bar*, 748 P.2d 1161 (Cal. 1988)).

R.C. 2323.51(A)(2)(a)(i)-(iv) Herman allegedly violated. However, because Slavin alleged that Herman's defenses against his cross-claim had no basis in law or fact, we consider all subsections, with the understanding that the trial court had a duty to consider the allegations under an "objective standard" and that the conduct be *egregious* before sanctions could issue. *State ex rel. DiFranco*, 2015-Ohio-4915, at ¶ 15 ("Frivolous conduct, as contemplated by R.C. 2323.51(A)(2)(a), is judged under an objective, rather than a subjective standard, *Striker* at ¶ 21, and must involve egregious conduct.").

{¶ 40} Under R.C. 2323.51(A)(2)(a)(i), conduct is frivolous if it "obviously serves merely to harass or maliciously injure another party." The trial court was not faced with such a scenario. In Valentik's brief in opposition to the motion for summary judgment on Slavin's cross-claim and proposed findings of law and conclusions of law, Herman argued that contracts made in violation of the Ohio Rules of Professional Conduct may be void and may violate public policy and that an unfair contract between an attorney and his client may be deemed unconscionable. Herman further argued that compound interest on the promissory notes was one basis for his argument that the notes and mortgages were unconscionable. After Herman made these arguments, the court denied Slavin's motion for summary judgment. Herman reiterated the same arguments in his proposed findings of fact and conclusions of law.

{¶ 41} These arguments present a plausible affirmative defense to the cross-claim. The magistrate's decision acknowledged the general validity of these

defenses, but determined they were inapplicable to the case based on the timeline of the parties' attorney-client relationship as determined at trial.

{¶ 42} Notably, in his summary-judgment briefing and in his motion for sanctions, Slavin did not argue that there was no attorney-client relationship between himself and Valentik at the time the promissory notes and mortgages were executed.  Instead, he argued, incorrectly, that the promissory notes and mortgages did not constitute a "transaction" under Prof.Cond.R. 1.8. [6]  The timeline of representation appears to have been raised, for the first time, during the trial on Slavin's cross-claim, and thereafter addressed in Slavin's proposed findings of fact and conclusions of law.  This critical issue was not honed until the magistrate's decision, where it was found dispositive for purposes of the cross-claim defense.

{¶ 43} On these facts, we cannot say that the trial court, in adopting the magistrate's decision, was confronted with a situation where it would have been "obvious" that Valentik's defenses were asserted by Herman simply to harass and injure Slavin.  Herman raised a legitimate question relating to the enforceability of a transaction that arose out of an attorney-client relationship.  It was, therefore,

---

[6] This is a faulty argument. The Merriam-Webster dictionary defines "transaction" broadly to include, "an act, process, or instance of transacting," as well as "a communicative action or activity involving two parties or things that reciprocally affect or influence each other." *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/transaction (accessed May 12, 2026) [https://perma.cc/4HGC-NTNW].  Furthermore, Prof.Cond.R. 1.8 applies to both a "business transaction," with a client, *and* to "acquir[ing] an ownership, possessory, security, or other pecuniary interest adverse to a client." Prof.Cond.R. 1.8(a). *See also Disciplinary Counsel v. Squire,* 2011-Ohio -5578, ¶ 15, where the court adopted the disciplinary board's finding that the attorney had violated Rule 1.8(a) when he executed a promissory note to pay a debt to a client without taking the necessary steps outlined in Prof.Cond.R. 1.8(a)(1)-(3).

neither harassing, nor improper, to raise questions about the applicability of Prof.Cond.R. 1.8. Further, we note that Herman's defense against the imposition of compound interest was successful. At trial Slavin waived compound interest. Under these circumstances, the trial court did not abuse its discretion by denying Slavin's motion for sanctions under R.C. 2323.51(A)(2)(a)(i).

{¶ 44} As previously stated, under R.C. 2323.51(A)(2)(a)(ii) conduct is frivolous if "it is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." Additionally, "simply advancing a losing argument does not amount to frivolous conduct." *Musial Offices, Ltd. v. Cuyahoga Cty.*, 2021-Ohio-2325, ¶ 20 (8th Dist.).[7] Having determined that Herman presented plausible defenses to the cross-claim, we find no abuse of discretion in the trial court's denial of sanctions under subsection (a)(ii).

{¶ 45} R.C. 2323.51(A)(2)(a)(iii) and (iv) are similar in that they focus on whether factual assertions lack evidentiary support. R.C. 2323.51(A)(2)(a)(iii) states that conduct is frivolous if it consists of allegations or other factual contentions that have no evidentiary support, or are not likely to have evidentiary support, after a reasonable opportunity to investigate. R.C. 2323.51(A)(2)(a)(iv) states that conduct is frivolous if it consists of denials or factual assertions not warranted by the

---

[7] We note that Slavin also pursued a "losing" argument by repeatedly arguing that promissory notes and mortgages are not contemplated by Prof.Cond.R. 1.8 because they are not a "transaction."

evidence or not reasonably based on a lack of information or belief. As in the brief of appellee, "[i]t was unclear when the cross-claim was filed, and remains unclear, when Slavin stopped being Valentik's attorney." Accordingly, we find no abuse of discretion in the trial court's denial of sanctions under subsections (a)(iii) or (a)(iv).

### 2. Civ.R. 11

{¶ 46} We likewise find that the trial court did not abuse its discretion when it denied Slavin's motion for sanctions under Civ.R. 11. We note that Civ.R. 11 has a higher threshold for sanctions than R.C. 2323.51 because it requires a finding that Herman acted willfully and in bad faith, through the application of a subjective, bad-faith standard. *See Omerza v. Bryant & Stratton*, 2007-Ohio-5216, ¶ 16 (11th Dist.); *see also Mason*, 2007-Ohio-4789, at ¶ 19. For the reasons stated in our discussion of R.C. 2323.51 above, we do not find that the trial court abused its discretion when it concluded Slavin did not demonstrate that Herman acted frivolously, much less that he acted willfully with bad faith.

## III. CONCLUSION

{¶ 47} Having found that the trial court acted within its discretion in denying Slavin's motion for sanctions under both Civ.R. 11 and R.C. 2323.51, we overrule the appellant's sole assignment of error and affirm the trial court's decision.

{¶ 48} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
LISA B. FORBES, PRESIDING JUDGE

MARY J. BOYLE, J., and
MICHAEL JOHN RYAN, J., CONCUR